UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | ) | CASE NO.: 1:25-CV-00318 |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | |
| | ) | |
| MICHAEL BALLEW, ANDY (CARL) | ) | MAGISTRATE JUDGE JENNIFER |
| BERRYMAN, ELIAS GONZALES, | ) | DOWDELL ARMSTRONG |
| PEDRO GONZALEZ, NICHOLAS | ) | |
| LICHWICK, HONG (BOBBY) LUU, | ) | |
| BLAIN ROSENBERRY, GEORGE | ) | |
| TABORA, and ROBERT WEBB, | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

---

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

II.    SUMMARY OF ARGUMENTS PRESENTED ................................................. 1

III.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ............................... 3

IV.   LAW AND ARGUMENT ................................................................................. 5

     A.     Standard for Injunctive Relief ............................................................. 5

     B.     Union Home Does Not Have a Strong Likelihood of Success on the Merits......... 6

          i.     Procedurally, This Matter Is Not Properly Before This Court. .................. 6

          ii.    Substantively Union Home Cannot Show a Strong Likelihood of Success on the Merits of Its Breach of Contract Claims. ........................................ 7

     C.     Union Home Will Not Suffer Irreparable Harm in the Absence of a Preliminary Injunction. ...................................................................................... 13

     D.     An Injunction Would Cause Harm to Third Parties and Not Serve the Public Interest............................................................................................. 16

     E.     If a Preliminary Injunction is Issued, Bond Should Be Set at $1.5 million........... 17

V.    CONCLUSION.............................................................................................. 18

CERTIFICATE OF SERVICE ..................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) .................................................................... 13

*Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.* 511 F. App'x 398 (6th Cir. 2013) .......................................................................................................................................... 15

*Automation & Modular Components, Inc. v. Blackford*, No. 23-cv-12420, 2023 U.S. Dist. LEXIS 198219 (E.D. Mich. Nov. 3, 2023) ........................................................................................... 14

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) .......................................................................... 5

*Brentlinger Enterprises v. Curran*, 141 Ohio App.3d 640 (2001) .................................................. 8

*Brieger v. Telectronics, Inc.,* 816 F.2d 678, 1987 U.S. App. LEXIS 5101 (6th Cir. April 17, 1987) .................................................................................................................................................... 13

*Cbiz, Inc. v. Cryan*, No. 1:24-cv-1027, 2024 U.S. Dist. LEXIS 240910 (N.D. Ohio Jul. 23, 2024) ............................................................................................................................................ 8, 12, 16

*Cellnet Communs., Inc. v. New Par,* 291 F. Supp. 2d 565 (E.D. Mich. 2003) ............................. 15

*Century Bus. Servs., Inc. v. Urban*, 179 Ohio App. 3d 111 (2008) ................................................ 7

*Cenveo Corp. v. Southern Graphic Systems, Inc.*, No. 08-5521, 2009 U.S. Dist. LEXIS 4542 (D. Minn. Jan. 22, 2009) .............................................................................................................. 17

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007) .................................................................................................................................................... 13

*Citibank, N.A., v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) ............................................................. 15

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019) ............................................................ 13

*Economou v. Physicians Weight Loss Centers of America*, 756 F. Supp. 1024 (N.D. Ohio 1991) .................................................................................................................................................... 13

*Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028 (N.D. Ohio 2003) ................ 16

*FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521 (6th Cir. 2013) ................................... 10

*Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261 (6th Cir. 1985) .................................... 16

*Gissendanner v. Riversource Life Ins. Co.*, No. 22-1577, 2023 U.S. App. LEXIS 18234 (6th Cir. 2023) ......................................................................................................................................... 6

*Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620 (6th Cir. 2000) ........................................... 5

*Jacono v. Invacare Corp.*, 2006-Ohio-1596 (8th Dist.) ................................................................. 11

*Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009) ............................................................................... 5

*Kross Acquisition Co., LLC v. Groundworks Ohio LLC*, 2024-Ohio-592 (8th Dist.)................... 12

*Laukus v. Rio Brands, Inc.*, No. 5:07CV2331, 2007 U.S. Dist. LEXIS 119239 (N.D. Ohio Aug. 7, 2007) ........................................................................................................................................ 15

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000).......................................................................... 5

*Ohio Contrs. Assn. v. City of Akron*, No. 5:14CV0923, 2014 U.S. Dist. LEXIS 61313 (N.D. Ohio May 1, 2014)............................................................................................................................... 16

*Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566 (6th Cir. 2002).......... 5

*Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964 (6th Cir. 2002) ............................................... 13

*Pitney Bowes Inc. v. Acevedo*, No. 08-21808, 2008 U.S. Dist. LEXIS 61194 (S.D. Fla. July 28, 2008) ........................................................................................................................................ 17

*Raimonde v. Van Vlerah*,325 N.E.2d 544 (Ohio 1975)................................................8, 10, 11, 12

*Sampson v. Murray,* 415 U.S. 61, 90 (1974)................................................................................. 13

*SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370 (4th Cir. 2017)............................. 17

*Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-cv-02488, 2022 WL 312711 (N.D. Ohio Feb. 2, 2022) ............................................................................................................................... 8

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938) 6

*Total Quality Logistics, LLC v. Eda Logistics LLC*, 2024 U.S. App. Lexis 25149..........7, 8, 11, 12

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995).......................................... 15

*Union Home Mtge. Corp. v. Fratelli*, No. 1:23-cv-857, 2025 U.S. Dist. LEXIS 35673 (N.D.Ohio Feb. 27, 2025) ........................................................................................................................... 17

*Vapor Technology Assn. v.* Taylor, No. 25-5137, 2025 U.S. App. LEXIS 8430 (6th Cir. Apr. 9, 2025) ........................................................................................................................................ 15

*Walther v. Fla. Tile, Inc.*, No. 3:17-cv-257, 2017 U.S. Dist. LEXIS 137531 (S.D. Ohio Aug. 28, 2017) .......................................................................................................................................... 5

**Statutes**

Federal Rule of Civil Procedure 65(c) .......................................................................................... 17

## I.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>

In this case Plaintiff Union Home Mortgage Corp. ("Union Home" or "UHM") seeks to enforce restrictive covenants and claw back bonuses that it has used to effectively restrain loan officers from accepting employment at any other mortgage companies.  As a result, Union Home loan officers have been forced to remain employed by Plaintiff, despite loan practices that appear to directly violate federal law and deny compensation due and owing them.

Here, Defendants joined another mortgage company and in doing so, they made significant efforts to act in a professional manner, in good faith, without taking Plaintiff's confidential information.  Moreover, Defendants with unvested signing bonuses also paid back the entire unvested portion of those bonuses.

Through the instant motion, Plaintiff seeks the extraordinary judicial remedy of a preliminary injunction against nine former employees. Notably, there is no allegation by the Plaintiff of unlawful solicitation, unfair business practices, violation of trade secrets, or any other acts by Defendants that could be construed as misconduct.  With that backdrop, the Court must decide whether such an extraordinary remedy is appropriate.

To justify issuance of a preliminary injunction, Plaintiff must demonstrate that circumstances clearly demand it and prove: 1) it has a strong likelihood of success on the merits; 2) it will suffer irreparable harm absent issuance of an injunction; 3) the injunction will not cause substantial harm to others; and 4) issuing the injunction will serve the public interest.

## II.   <u>SUMMARY OF ARGUMENTS PRESENTED</u>

Here, Plaintiff cannot make the requisite showing to establish that it is entitled to a preliminary injunction. First, Plaintiff cannot demonstrate a strong likelihood of success on the merits. Plaintiff cannot do so as an initial matter because this matter is not properly before this

Court.[1] In addition, Plaintiff cannot demonstrate by clear and convincing evidence that the restrictive covenants are reasonable. Plaintiff seeks to enforce restrictive covenants that do not contain the same temporal, geographic, and other restrictions for other similarly situated employees *who held the exact same jobs*. For example, the five former Union Home "Branch Manager" Defendants have post-employment restrictions lasting between three (3) and twenty (20) months. Under these circumstances, this is tantamount to an admission by Union Home that only the least restrictive covenant is necessary to protect Union Home's interest.  If one "Branch Manager" has a three (3) month non-compete and another has a twenty (20) month non-compete, than Union Home has admitted that the three (3) month restriction is the least means necessary to protect its interest.  As such, the other restrictive covenants that are greater than necessary to protect any conceivable business interest, impose an undue hardship on Defendants and are, thus, unenforceable.

Second, Plaintiff cannot show that it would suffer irreparable injury because monetary damages are not difficult to calculate in this case and would adequately compensate Plaintiff. Plaintiff fails to even allege, let alone demonstrate, that any of the Defendants stole or are improperly using its confidential information. In addition, Plaintiff waited months to file its motion, further undermining its claim of irreparable harm.

Moreover, issuing an injunction would harm third parties and does not serve the public interests. Ultimately, Plaintiff does not seek to protect a legitimate business interest but instead attempts to broadly restrain and punish Defendants from lawfully engaging in their chosen trade. For all these reasons, and as more fully described herein, Plaintiff cannot meet its burden, and this Court should deny its motion for preliminary injunction.

---

[1] Defendants filed a Motion to Dismiss which details their position regarding the lack of the Court's jurisdiction over this matter. (Motion to Dismiss, ECF No. 8).

III.     **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[2]

The nine individual Defendants in this matter are former employees of UHM. Defendants were employed by UHM in several states, including: Maryland; North Carolina; Pennsylvania; and Virginia. (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction ("Plaintiff's Memorandum"), ECF No. 23, Page ID #: 467, 469, 470). Defendants left their employment with UHM on January 9, 2025 (Tabora), January 31, 2025 (Ballew, Berryman, Gonzales, Gonzalez, Rosenberry, and Webb), February 1, 2025 (Lichwick), and February 3, 2025 (Luu), and subsequently obtained employment with American Pacific Mortgage Corporation ("APM").

Defendants left their employment with UHM for several reasons. Most notably, Defendants believed that UHM actively engaged in compensation practices that were both unlawful and denied compensation owed to them pursuant to their employment agreements. (*See* Declaration of Kevin Caruana ("Caruana Decl."), attached hereto as Exhibit A, ¶6). For example, UHM leadership encouraged originators to compete for loan business by offering prospective borrowers price concessions (e.g., a reduced interest rate). UHM required originators to pay for the price concessions by reducing their own commissions on the loans.[3] (*Id.*) UHM conceals this practice by directing the originators to improperly designate the loans as "direct-to-consumer" loans. (*Id.*) By engaging in this practice, Defendants felt UHM breached their employment agreements by improperly withholding margins that should have been paid to them and, at a minimum, comes to the Court with unclean hands.

---

[2] For the purpose of this Brief only, Defendants are not contesting the facts as represented in Plaintiff's Motion for Preliminary Injunction because they are largely immaterial to the requested relief. Defendants, however, reserve the right to contest, object to, or otherwise dispute the facts at a later date.

[3] This practice may, in fact, violate applicable federal law which prohibits mortgage companies from reducing originator compensation to cover the costs of price concessions.

Although Defendants were eager to leave UHM to escape these practices, they were hesitant to make the move.  Defendants knew that UHM had a reputation for using overly aggressive legal tactics to restrain originators from pursuing other opportunities.  Accordingly, Defendants left UHM in a good faith and professional manner. As part of their good faith, the Defendants that had outstanding unvested sign-on bonuses repaid the portions of those bonuses that had not fully vested. (*Id.* at ¶7). To do so, Defendants proactively contacted UHM to discuss the amounts due and coordinate delivery of payment. (*Id.*) However, true to their reputation, it appears that UHM intentionally ignored these repayment efforts and refused to give Defendants guidance in an effort to gain a legal advantage. Not deterred, the applicable Defendants independently calculated the amounts due, identified an appropriate UHM representative, and tendered repayment to UHM.  In or around March 2025, all unvested portions of the applicable sign-on bonuses have been fully repaid. (*Id.*)

In the weeks following their departure from UHM, Defendants continued to demonstrate their professionalism in countless ways. For example, as other UHM employees contacted Defendants about employment opportunities, Defendants turned them away to avoid any appearance of inappropriate solicitation. (*Id.* at ¶8). In addition, Defendants asked APM to accept outstanding UHM office leases for offices that UHM no longer wanted or needed after Defendants left their employment with UHM; and to purchase all office equipment and furniture utilized by Defendants in their former offices. (*Id.* at ¶9). APM agreed to and took these steps, accepting office leases from UHM and paying UHM for office equipment and furniture based upon UHM's valuations. (*Id.*) In almost every imaginable way, Defendants demonstrated their intent to engage in honest, good faith, and fair competition. Notably, UHM has made absolutely no allegations that

Defendants removed or used UHM loan files, marketing materials, customer lists, or other proprietary documents.

Despite Defendants' efforts to accomplish a respectful separation, Plaintiff filed its Complaint on February 17, 2025. (Complaint, ECF No. 1.) Defendants later filed a Motion to Dismiss on April 14, 2025, and answered the Complaint April 18, 2025. (Motion to Dismiss, ECF No. 8., and Answers, ECF Nos. 10-18.). On May 1, 2025, approximately two weeks after Defendants filed their Motion to Dismiss and 73 days after filing the Complaint, Plaintiff filed a Motion for Preliminary Injunction and Memorandum in Support. (ECF Nos. 21, 23.)

## IV.  LAW AND ARGUMENT

### A.  Standard for Injunctive Relief

A preliminary injunction is "an extraordinary measure" that is "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (internal citations omitted). Courts should apply this remedy only where "the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002).

In deciding whether to issue a preliminary injunction, the Court must consider four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparably harm absent issuance of the injunction; 3) whether issuing the injunction would cause substantial harm to others; and 4) whether issuing an injunction would serve the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). While these factors should be balanced together, "a finding that there is no likelihood of irreparable harm or no likelihood of success on the merits is often fatal." *Walther v. Fla. Tile, Inc.*, No. 3:17-cv-257, 2017 U.S. Dist. LEXIS 137531, at *2-3 (S.D. Ohio Aug. 28, 2017) (*citing Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)). The plaintiff bears the burden of establishing that a preliminary injunction should be issued. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). As demonstrated

more fully herein, Plaintiff has failed to carry its burden. As such, this Court should deny Plaintiff's Motion for Preliminary Injunction.[4]

### B.        Union Home Does Not Have a Strong Likelihood of Success on the Merits.

### i.        Procedurally, This Matter Is Not Properly Before This Court.

As an initial matter, Union Home cannot demonstrate a strong likelihood of success on the merits because this matter is not properly before this Court. As detailed more fully in the pending Motion to Dismiss,[5] this Court is only conferred jurisdiction where the parties are diverse and the amount in controversy requirement is satisfied. Here, Plaintiff has not established the requisite amount of damages per Defendant to properly confer jurisdiction upon this Court. The amount in controversy determination is made at the time the Complaint is filed. *Gissendanner v. Riversource Life Ins. Co.*, No. 22-1577, 2023 U.S. App. LEXIS 18234, at *4 (6th Cir. 2023). Courts look to the face of the Complaint and generally accept "the sum demanded in good faith." *Id*. (Internal citations omitted.) The good faith standard is "objective and asks whether it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* at *5 (*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). However, where the amount requested "has no plausible legal basis [it] cannot establish the amount in controversy." *Id*. at *14.

Plaintiff cannot establish with a legal certainty that the damages against any of the Defendants meets or exceeds the $75,000 threshold. Since the amount is considered at the time the Complaint was filed, Plaintiff must that establish it incurred $75,000 in damages between when Defendants' employment with Union Home ended (between January 9 and February 3, 2025) and

---

[4] Additionally, Plaintiff has failed to demonstrate that a choice of law provision overrides application of the laws of Maryland, North Carolina, Pennsylvania, and/or Virginia.

[5] For brevity's sake, Defendants incorporate by reference their Motion to Dismiss and Reply Brief. (ECF Nos. 8, 24).

February 17, 2025. Plaintiff alleged that Defendants Luu, Rosenberry, Tabora, and Webb owe it unearned bonuses; however, those claimed damages only range between $7,300.90 and $43,291.83. (Complaint, ECF No. 1, PageID #: 36-38). Plaintiff also claimed that it is entitled to attorneys' fees which will exceed $75,000 per Defendant. (Opposition to Motion to Dismiss, ECF No. 21, PageID #: 437). However, the contractual attorneys' fees provision that UHM relies upon has already been determined to be unenforceable.  *Total Quality Logistics, LLC v. Eda Logistics LLC*, 2024 U.S. App. Lexis 25149 (holding that a unilateral fee shifting provision contained in an employment agreement is an unenforceable contract of adhesion).  Accordingly, UHM cannot rely on an unenforceable fee shifting provision to meet its damage requirement.

Beyond that, Plaintiff had only incurred $53,344 in total attorneys' fees as of April 28, 2025. Any future attorneys' fees are too speculative to include in the damages calculation for purposes of determining jurisdiction. (Opposition to Motion to Dismiss, ECF No. 21, PageID #: 437).  For example, what if one Defendant is successful on a dispositive motion prior to trial, it cannot be said with certainty that Defendant will have incurred $75,000 in legal fees.

Finally, while Plaintiff has asserted a claim for lost profits based on the prior year total sales volume, these calculations are too remote and speculative to be considered, particularly given the current volatility in the market.  For all these reasons and as more fully detailed in Defendants' Motion to Dismiss filings, Plaintiff cannot establish a strong likelihood of success on the merits.

### ii.    *Substantively Union Home Cannot Show a Strong Likelihood of Success on the Merits of Its Breach of Contract Claims.*

Under Ohio law, "restrictive covenants in employment agreements have been disfavored by courts since such covenants are normally written by employers and are in restraint of trade and the right to livelihood." *Century Bus. Servs., Inc. v. Urban*, 179 Ohio App. 3d 111, 118 (2008). Before evaluating the likelihood of success on the merits, a court first must "assess whether the

7

noncompete is enforceable under Ohio law." *Cbiz, Inc. v. Cryan*, No. 1:24-cv-1027, 2024 U.S. Dist. LEXIS 240910, at *27 (N.D. Ohio Jul. 23, 2024). "In Ohio, noncompete and nonsolicitation agreements that are reasonable are enforced." *Id.* (*quoting Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-cv-02488, 2022 WL 312711, at *33 (N.D. Ohio Feb. 2, 2022)).

In their analysis, "Ohio courts compare the reasonableness of contractual restrictions against an employer's legitimate interests 'using three factors.'" *Total Quality Logistics, LLC v. Eda Logistics LLC*, No. 23-3713, 2024 U.S. App. LEXIS 25149, at *13 (6th Cir. Oct. 2, 2024). A court will find a restrictive covenant reasonable "only where the employer can show by clear and convincing evidence that the restrictions imposed . . . (1) are no greater than necessary for the protection of the employer's legitimate business interest, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public."[6] *Brentlinger Enterprises v. Curran*, 141 Ohio App.3d 640, 645 (2001) (*citing Raimonde v. Van Vlerah*,325 N.E.2d 544, 547 (Ohio 1975)).

"A covenant is no greater than necessary where the restraints imposed are reasonably necessary to protect an employer's legitimate interests." *Cbiz, Inc.*, 2024 U.S. Dist. LEXIS 240910, at *28 (*quoting Brentlinger Enterprises*, 141 Ohio App. 3d at 645). In its brief, Plaintiff's cites the Ohio Supreme Court's *Raimonde* factors for determining whether the restrictive covenants are reasonable and enforceable. (*See* Plaintiff's Memorandum, ECF No. 23, Page ID #: 478-82). While Defendants do not dispute the *Raimonde* factors' general application, Plaintiff incorrectly applies them to the matter at hand.

For example, Plaintiff attempts to demonstrate that the temporal and spatial restrictions are no greater than necessary by making broad and conclusory statements. (*Id.* at Page ID #: 479-83).

---

[6] To the extent Defendant does not include arguments concerning Plaintiff's inability to meet all three of these factors or all nine of the *Raimonde* factors, they do so for efficiency purposes. Defendants reserve the right to contest application of any of these factors at a later date.

The restrictive covenants, however, are anything but "limited noncompetes," as a range of restrictions are present amongst the various agreements. For example, the agreements include the following post-employment temporal restrictions:

| Defendant | Job Title | Noncompete Expiration | Post-Employment Duration |
|---|---|---|---|
| Mr. Ballew | Loan Officer Branch Manager | April 30, 2025 | 3 months |
| Mr. Lichwick | Area Sales Manager | April 30, 2025 | 3 months |
| Mr. Tabora | Loan Officer | September 25, 2025 | 8.5 months |
| Mr. Webb | Branch Manager | November 8, 2025 | 9 months |
| Mr. Berryman | Area Sales Manager | November 30, 2025 | 10 months |
| Mr. Elias Gonzales | Branch Manager | December 31, 2025 | 11 months |
| Mr. Pedro Gonzalez | Branch Manager | December 31, 2025 | 11 months |
| Mr. Luu | Team Lead | October 2, 2026 | 20 months |
| Mr. Rosenberry | Branch Manager | September 30, 2026 | 20 months |

(Complaint Exs. A, C, D, E, F, G, H, I, and J, ECF Nos. 1-1, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, and 1-10). Tellingly, the above demonstrates that the temporal restrictions are not tied to specific positions as, for example, the post-employment restrictions last: between three (3) and twenty (20) months for Branch Managers; three (3) and eight and one-half (8.5) months for Loan Officers; and three (3) and ten (10) months for Office Managers.  Similarly, despite being only two of the five Branch Managers whom Plaintiff sued, Mr. Elias Gonzales and Mr. Pedro Gonzalez are subject to much more onerous restrictions. Mr. Gonzales and Mr. Gonzalez: cannot work for a "Competitive Entity" *or* vendor to the Company, while others are only restricted from working for competitive entities; are subject to a geographic restriction that "*applies throughout the United States,*" whereas others are only limited from working where licensed and they worked for Plaintiff; and "Competitive Entity" is defined as "a business *operating or* competing" with Plaintiff, instead of one that competes with Plaintiff in the industry. (*Id.*) (*emphasis added*). In all, these discrepancies demonstrate that the restrictive covenants are not reasonable and are greater than necessary to protect Plaintiff's legitimate business interests.

Plaintiff likewise misapplies the third *Raimonde* factor - "whether the employee is possessed with confidential information or trade secrets." *See FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 526 (6th Cir. 2013) (*citing Raimonde*, 325 N.E.2d at 547). Here, the absence of certain allegations in Plaintiff's Complaint and Memorandum is more telling than what Plaintiff's Memorandum actually includes. In its Memorandum, Plaintiff claims: the "limited noncompetes" are designed to protect, and reasonably prevent Defendants from using, Plaintiff's confidential information; and Defendants had "continuous and unfettered access" to such information. (Plaintiff's Memorandum, ECF No. 23, PageID #: 479, 480). However, Plaintiff's Complaint does not include a misappropriation of trade secrets claim (or other analogous claim). In addition, Plaintiff's Complaint and Memorandum are utterly devoid of any allegations that Defendants stole, let alone stole and are now improperly using, any of Plaintiff's confidential information. Thus, Defendants clearly are not now "possessed with confidential information or trade secrets."

The restrictive covenants at issue further would improperly stifle Defendants' inherent skill and experience. As evident by the NMLS pages attached to Mr. Cribari's declaration, every Defendant has spent more time, if not significantly more time, working in financial services than they did working for Plaintiff:[7]

| Defendant | Tenure with Union Home | Financial Service Experience |
| --- | --- | --- |
| Mr. Ballew | 3 years | 6 years |
| Mr. Lichwick | 6.5 years | 17.5 years |
| Mr. Tabora | 1.5 years | 3 years |
| Mr. Webb | 1 year | 14 years |
| Mr. Berryman | 3.5 years | 16 years |
| Mr. Elias Gonzales | 2.5 years | 17 years |
| Mr. Pedro Gonzalez | 2.5 years | 10.5 years |
| Mr. Luu | 6.5 years | 7.5 years |

---

[7] The estimated years of tenure/experience included in this chart are rounded to the nearest half-year.

10

| Mr. Rosenberry | 8.5 years | 16.5 years |

(*See* Decl. of Mr. Cribari Exs. A, B, C, D, E, F, G, H, and I, ECF No. 23-1, PageID #: 496-534). As such, the restrictive covenants impermissibly seek to stifle Defendants' inherent skills and experience in the industry, which they developed well before working for Plaintiff. *See Jacono v. Invacare Corp.*, 2006-Ohio-1596, ¶29 (8th Dist.) (in finding restrictive covenant unenforceable, court found employee had developed certain skills prior to her employment).

Further, at least with respect to Mr. Elias Gonzales and Mr. Pedro Gonzalez, the restrictive covenants also bar their sole means of support, running afoul of the seventh *Raimonde* factor. Indeed, Mr. Elias Gonzales and Mr. Pedro Gonzalez's restrictions prohibit them from working in a same or similar capacity, for any company operating in the residential mortgage banking industry, or a vendor of Plaintiff, anywhere in the United States. (Complaint Exs. D, E, ECF Nos. 1-4, 1-5). In other words, if subject to these restrictions, Mr. Elias Gonzales and Mr. Pedro Gonzalez would be forced to find a completely different job, in a completely different industry, or move outside the United States (when they are licensed to work in certain states in the U.S.). Such a restriction is tantamount to an impermissible restraint on trade and prevents Defendants from earning a living.

Plaintiff also utterly fails to demonstrate that Defendants' talents which it seeks to suppress were developed during Defendants' employment. Plaintiff's Memorandum contains a single sentence regarding the training/investment it puts into employees – "Union Home invests significant time, effort, and resources into recruiting, training, and retaining this staff." (Plaintiff's Memorandum, ECF No. 23, PageID #: 465). Courts have found applicable restrictions unenforceable based upon far more evidence/allegations of a company's training/investment into employees. *See Total Quality Logistics, LLC v. Eda Logistics LLC*, No. 23-3713, 2024 U.S. App. LEXIS 25149, at *14 (6th Cir. Oct. 2, 2024) (Sixth Circuit upheld lower court's determination that

the employer fell "short of providing by clear and convincing evidence it had 'provided . . . access to sufficient training or information to support'" to enforce scope of noncompete band.)[8]

As made clear by the significant issues discussed herein, the restrictive covenants in question are unreasonable and unenforceable. Under such circumstances, it is appropriate for this Court to refuse to enforce or modify the restrictive covenants. *See Kross Acquisition Co., LLC v. Groundworks Ohio LLC*, 2024-Ohio-592, ¶20 (8th Dist.) ("With so many factors and considerations necessary to rewrite the [noncompete agreement] to comport with *Raimonde's* rule of reasonableness, we hold that the trial court did not abuse its discretion by refusing to modify [the noncompete agreement.]").

At times, courts have rewritten unreasonable restrictive covenants to enforce them "to the extent necessary to protect [the] employer's legitimate interests." *Cbiz, Inc. v. Cryan*, No. 1:24-cv-1027, 2024 U.S. Dist. LEXIS 240910, at *27-28 (N.D. Ohio Jul. 23, 2024). To the extent this Court chooses that approach in this matter, it is clear the restrictive covenants, at most, must be significantly limited to the following: a confidentiality provision; and a non-solicitation of customers provision.[9]

Finally, given that UHM was not property paying its employees, possibly in violation of federal law, by requiring loan originators to pay for loan price concessions by reducing their own commissions on the loans, UHM comes to the Court with unclean hands and cannot, therefore, enforce the contract. Caruana Decl., ¶6.

---

[8] Notably, the *Total Quality Logistics* Court found that the employer had "substantiated with evidence its interest in protecting customer goodwill and relationships," and that interest was "adequately protected by the agreement's non-solicitation provision." *Id.*

[9] Notably, the non-solicitation provision Plaintiff seeks to have enforced through its preliminary injunction motion remains impermissibly overboard and also amounts to a noncompete provision. In relevant part, Plaintiffs ask that Defendants be prohibited from "soliciting *or accepting* business" from Union Home's customers, prospective customers, and referral sources. (*See* Plaintiff's Memorandum, ECF No. 23, Page ID #:482) (emphasis added).

**C.    Union Home Will Not Suffer Irreparable Harm in the Absence of a Preliminary Injunction.**

Among the applicable factors, demonstrating irreparable injury is "a *sine qua non* for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002). To demonstrate irreparable injury, a plaintiff must show that it "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Moreover, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90 (1974). Without an irreparable injury, there is "no need to grant relief now as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019).

Irreparable harm does not exist where the alleged damages are compensable through other means, and a "remedy of money damages is well suited to redress" the injury. *Brieger v. Telectronics, Inc.,* 816 F.2d 678, 1987 U.S. App. LEXIS 5101, at *3 (6th Cir. April 17, 1987); s*ee also Economou v. Physicians Weight Loss Centers of America*, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991) (irreparable harm did not exist where the party failed to show that "any harm to the business would not be quantifiable in terms of money damages.") "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).

Here, it is abundantly clear that money damages will redress Plaintiff's claimed injuries, and those money damages are not difficult to calculate. Indeed, this Court need look no further than Plaintiff's Opposition Defendants' Motion to Dismiss for evidence. There, Plaintiff detailed "each component of what is at issue in this case" and included retention bonuses, existing and

anticipated harm, and attorneys' fees. (Response in Opposition to Motion to Dismiss, ECF No. 21, PageID #: 435). For each category, Plaintiff also identified specific, calculable monetary amounts. Those included: between $7,300.90 and $43,291.83 per individual for retention bonuses;[10] $53,344 in attorneys' fees incurred to date; and between $45,138 and $944,987 per individual in estimated lost profits, accounting for the other harm suffered. (*Id.* at PageID #: 435-36, 437, 439-40).

In its Memorandum, Plaintiff claims it will suffer irreparable harm based upon issues including: interference with customer relationships; loss of customer goodwill; and misappropriation of confidential information. (ECF No. 23, PageID #: 484).  Plaintiff even suggests that "[w]ithout an injunction, Defendants will be free to continue to exploit the confidential information they acquired." (*Id.*) However, nowhere does Plaintiff allege that a single Defendant has stolen confidential information, improperly used confidential information after his employment with Plaintiff ended, or stolen customers. Plaintiff did not allege any of this in the Complaint filed on February 17, 2025 nor in its Memorandum filed on May 1, 2025. Thus, Plaintiff fails to sufficiently support these claimed damages for purposes of considering irreparable harm. *See Automation & Modular Components, Inc. v. Blackford*, No. 23-cv-12420, 2023 U.S. Dist. LEXIS 198219, at *15 (E.D. Mich. Nov. 3, 2023) (the Company failed "to adequately support its claims of loss of customer goodwill, relying on a tenuous possibility of harm in the form of losing customers to Defendants.")

In its filings, Plaintiff's allegations focus on Defendants purported breach of their contracts by going to work for a competitor. As such, the claims and potential damages fall squarely within a typical breach of contract action, and the classic remedy for such action is monetary damages, not a preliminary injunction. *See Id.*("[W]hile the Court has the discretion to permit injunctive

---

[10] Which Defendants since have repaid.

relief for breach of contract, the classic remedy for breach of contract is an award at law for damages."); *see also Cellnet Communs., Inc. v. New Par,* 291 F. Supp. 2d 565, 570 (E.D. Mich. 2003). Here, Defendants went to work for a new company that purchased UHM's office equipment and leased UHM's offices space. Caruana Decl. at ¶9. And, in addition, Defendants did not, and are not even alleged to have, taken any confidential information. They used a computer program to generate their leads. *Id*. at ¶10.

Moreover, Plaintiff's claim of irreparable harm further is undermined by its delay in seeking a preliminary injunction. *Vapor Technology Assn. v.* Taylor, No. 25-5137, 2025 U.S. App. LEXIS 8430, at *5 (6th Cir. Apr. 9, 2025) ("[A]ny such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.") (*quoting Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). Here, Plaintiff filed its Complaint on February 17, 2025, and then waited approximately two and one-half (2.5) months to file its Preliminary Injunction Motion on May 1, 2025. Notably, Plaintiff introduced no new facts or allegations regarding Defendants activities during that timeframe. Instead, the only significant development between February 17 and May 1 was Defendants filing their Motion to Dismiss. Given these factors, Plaintiff's "own delay casts serious doubt as to the urgency of the requested relief." *Laukus v. Rio Brands, Inc.*, No. 5:07CV2331, 2007 U.S. Dist. LEXIS 119239, at *22 (N.D. Ohio Aug. 7, 2007); *see also Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.* 511 F. App'x 398, 405 (6th Cir. 2013) ("an unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm.")

Indeed, courts have found that waiting for shorter periods of time than Plaintiff did here cut against or defeat claims of irreparable harm. *See Citibank, N.A., v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (10-week delay defeated finding of irreparable harm); *Ohio Contrs. Assn. v. City*

*of Akron*, No. 5:14CV0923, 2014 U.S. Dist. LEXIS 61313, at *25 (N.D. Ohio May 1, 2014) (holding that where the plaintiff had knowledge of the alleged irreparable harm for two months before seeking injunctive relief, this cut against a finding of such harm).

Finally, while Plaintiff references a contractual provision regarding irreparable harm, such language does not negate Plaintiff's burden of proof. Indeed, as this very Court has held "[n]otwithstanding the parties' agreements, the law requires proof of harm, even where a contract states otherwise." *Cbiz, Inc. v. Cryan*, No. 1:24-cv-1027, 2024 U.S. Dist. LEXIS 240910, at *38 (N.D. Ohio Jul. 23, 2024).

For all the reasons described herein, Plaintiff is unable to demonstrate that it will suffer irreparable harm in the absence of a preliminary injunction, and Plaintiff's motion should be denied on this basis alone.

**D.** **An Injunction Would Cause Harm to Third Parties and Not Serve the Public Interest.**

In their analysis, courts "must consider whether the preliminary injunction would harm the party enjoined or others, and if so, whether such harm outweighs any irreparable harm established by the party seeking the injunction." *Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F. Supp. 2d 1028, 1045 (N.D. Ohio 2003). "Where harm to others exists from an injunction, the party seeking the injunction must make an even stronger showing on the other factors to justify its issuance." *Id.* (*citing Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985)).

Both Defendants and third parties would be harmed by issuance of an injunction. Issuing the requested injunction would force Defendants out of work for a significant period of time. As to third parties, Plaintiff seeks to prohibit customers/prospective customers (individuals seeking a mortgage loan) and referral sources (real estate agents) from working with Defendants in any capacity during the period of the injunction.  In other words, these customers, potential customers,

and referral sources would be prevented from working with their chosen loan officer for 14 or more months. These facts weigh against the requested injunction. *See, e.g., SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 388 (4th Cir. 2017) ("Direct effects on innocent third parties have frequently grounded courts' denials of injunctions. This is especially so where the public interests weighing in favor of an injunction rely on broad, abstract rule of law concerns.") (collecting cases); *Cenveo Corp. v. Southern Graphic Systems, Inc.*, No. 08-5521, 2009 U.S. Dist. LEXIS 4542, at *11 (D. Minn. Jan. 22, 2009) (finding that "third-party clients[] would be most harmed by the injunctive relief" and it was unreasonable that the court "would be limiting those clients' right to work with a vendor of their choosing.").

Furthermore, given that Defendants acted in a good faith and professional manner, are not unfairly competing against Plaintiff, and the restrictive covenants are unreasonable, enforcing the restrictive covenants would injure the public without protecting any legitimate interests of Plaintiff.

### E.    If a Preliminary Injunction is Issued, Bond Should Be Set at $1.5 million.

Federal Rule of Civil Procedure 65(c) requires that, where a court issues a preliminary injunction, the movant "gives security in the amount that the court considers proper to pay the costs and damages sustained by any party to have been wrongfully enjoined or restrained." "Generally, the amount of bond in a non-compete/non-solicitation case should reflect 'the potential loss of salary reduced by the possibility of other employment opportunities in non-restricted areas and other mitigating factors.'" *Union Home Mtge. Corp. v. Fratelli*, No. 1:23-cv-857, 2025 U.S. Dist. LEXIS 35673, at *61 (N.D.Ohio Feb. 27, 2025) (*citing Pitney Bowes Inc. v. Acevedo*, No. 08-21808, 2008 U.S. Dist. LEXIS 61194, at *17 (S.D. Fla. July 28, 2008)).

Here, the injunction Plaintiff seeks would impose significant harm on the individual Defendants. The shortest injunction Union Home seeks is fourteen (14) months. (Pl.'s Resp. in

Opp'n to Defs.' Mot. to Dismiss, ECF 21, PageID #: 8.) Thus, it is necessary to consider the loss of 14 months' salary for each of the 9 Defendants. In its opposition to Defendants' Motion to Dismiss, Plaintiff detailed the annual salary for Defendant Lichwick, at $186,330.97. (*Id.* at PageID #: 10, fn. 5.) Thus, over a 14-month span alone Defendant Lichwick will suffer $217,386.13 in harm. Extrapolating this harm to all 9 Defendants for a 14-month period would equate to over $1.95 million.[11] With the understanding that some individual Defendants may have made less than Defendant Lichwick and Plaintiff seeks an injunction greater than 14 months for some Defendants, Defendants conservatively estimate that a bond of $1.5 million would be appropriate should the Court issue an injunction in this case.

## V.  **CONCLUSION**

Union Home cannot meet its burden of proving any of the four elements necessary for a preliminary injunction. Given that failure to prove either the likelihood of success on the merits or irreparable harm are fatal to a motion, Defendants respectfully requests that this Court deny Union Hom's motion for a preliminary injunction. A contrary decision would undermine the well-established principle that Ohio courts do not permit unnecessary and unreasonable restraints on trade.

---

[11] To arrive at this calculation, Defendants first calculated the monthly harm Mr. Lichwick would suffer based upon his annual salary, which was $15,527.58. Defendants then applied that to all nine Defendants to arrive at a total monthly harm amount of $139,748.22. Defendants then multiplied that by 14 to determine the total harm over a 14-month span for all nine Defendants.

Respectfully submitted,

/s/ Michael P. O'Donnell
Michael P. O'Donnell (0078390)
Andrew J. Cleves (0089680)
Lauri P. Hartmann (0105246)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216-515-1660 – Phone
modonnell@frantzward.com
acleves@frantzward.com
lhartmann@frantzward.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on this 22nd day of May 2025.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ Michael P. O'Donnell
*One of the Attorneys for Defendant*

4909-1298-1824, v. 7