# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:25-cv-00318-JPC |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL BALLEW, ANDY (CARL) | ) | |
| BERRYMAN, ELIAS GONZALES, | ) | |
| PEDRO GONZALEZ, NICHOLAS LICHWICK, | ) | |
| HONG (BOBBY) LUU, BLAIN ROSENBERRY, | ) | |
| GEORGE TABORA, and ROBERT WEBB, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY TO DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.         INTRODUCTION ................................................... 1

II.        LAW AND ARGUMENT ........................................ 2

    A.  Defendants' arguments regarding the amount in controversy have already been raised in their Motion to Dismiss. ........................................... 2

        1.  Union Home's legal fees should be considered in the amount in controversy as similar fee shifting provisions have been upheld and a factual record would be required to conclude otherwise. ............................................. 2

        2.  Union Home's lost profits should be considered in the amount in controversy despite Defendants' contradictory arguments........................................ 3

    B.  Defendants rely exclusively on inadmissible hearsay in an effort to establish tangential matters having little to do with their breaches of the limited noncompete provision... 3

    C.  Union Home is likely to succeed on the merits of its breach of contract claim. .......... 4

        1.  The Agreements' limited noncompete provisions is enforceable.......................... 4

        2.  Defendants indisputably breached the limited noncompete provision. ................ 10

        3.  Union Home will suffer irreparable harm absent the Court entering an order granting Union Home's request for an injunction. ................................. 11

        4.  Defendants acknowledge the Court's authority to reform, but then suggest the noncompete provision must be disregarded entirely. ........................... 14

        5.  An injunction would not cause harm to third parties and would serve the public's interest in preserving contractual obligations. ..................................... 15

III.      CONCLUSION........................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*2-J Supply, Inc. v. Garrett & Parker, L.L.C.,*
   2015-Ohio-2757 (4th Dist.) ...............................................................................2, 3

*AK Steel Corp. v. Miskovich,*
   No. 1:14cv174, 2014 WL 11881030 (S.D. Ohio March 3, 2014) ...........................7

*Automation & Modular Components, Inc. v. Blackford,*
   No. 23-cv-12420, 2023 WL 7276487 (E.D. Mich. Nov. 3, 2023)....................11, 12

*Basicomputer Corp. v. Scott,*
   973 F.2d 507 (6th Cir. 1992) ............................................................................3, 12

*CLT Logs. V. River West Brands,*
   777 F. Supp. 2d 1052 (E.D. Mich. Mar. 4, 2011) ...........................................13, 14

*FirstEnergy Sols. Corp. v. Flerick,*
   521 Fed. App'x 521 (6th Cir. 2013) ..............................................................8, 9, 15

*Horter Inv. Mgmt., LLC v. Cutter,*
   257 F. Supp. 3d 892 (S.D. Ohio June 16, 2017) .......................................................7

*Lincoln Elec. Co. v. Harbor Freight Tools USA, Inc.,*
   No 1:17 CV 2329, 2018 WL 10809987 (N.D. Ohio Aug. 15, 2018) ...............13, 14

*MP TotalCare Servs. v. Mattimoe,*
   648 F. Supp. 2d 956 (N.D. Ohio 2009)....................................................................6

*Oruganti v. Noem,*
   No. 2:25-cv-00409-ALM-EPD, 2025 WL 1144560 (S.D. Ohio April 18, 2025)....................4

*Office Depot, Inc. v. Impact Office Prods., LLC,*
   No. 1:09-cv-2791, 2011 WL 4833117 (N.D. Ohio Oct. 12, 2011) ...........................6

*Stryker Emp. Co., LLC v. Abbas,*
   60 F.4th 372 (6th Cir. 2023) ..................................................................................12

*Total Quality Logistics, LLC v. EDA Logistics, LLC,*
   No. 23-3713, 2024 WL 4372312 (6th Cir. 2024) ...............................................2, 3

*Total Quality Logistics, LLC v. Traffic Tech, Inc.,*
   No 1:21-cv-714, 2021 WL 5834299 (S.D. Ohio Dec. 8, 2021)................................7

*Try Hours, Inc. v. Douville*,
    2013-Ohio-53 (6th Dist.) ................................................................................................7

*Union Home Mortg. Corp. v. Fratelli*,
    No. 1:23-cv-857, 2025 WL 639315 (N.D. Ohio Feb. 27, 2025) .......................................4, 5, 6

**Other Authorities**

Local Rule 7.1 .................................................................................................................16

## I.    INTRODUCTION

Union Home brought this case before the Court as Defendants have, among other things, breached the limited non-compete provision of their Employment Agreements (the "Agreements"). Defendants *Response in Opposition to Plaintiff's Motion for Preliminary Injunction* (the "Response") raises several arguments but largely avoids that singular issue. The reason for such avoidance is simple—they did it and continue to do so. All Defendants agreed not to compete with Union Home in a specific area for a specific period of time. But all Defendants resigned *en masse* and immediately began working in the same capacity and in the same area for a direct competitor. None of the Defendants deny those key facts.

Yet Defendants attempt to cloud those key facts by: (1) revisiting the amount in controversy from their *Motion to Dismiss*; (2) asserting Union Home has not yet offered evidence they breached *other* provisions of the Agreement so the *non-compete* provision should be ignored; (3) offering an irrelevant and inadmissible third party declaration to assert Union Home incorrectly paid Defendants; (4) mischaracterizing the terms of the non-compete provisions while glossing over the Court's ability to reform them if necessary; and (5) claiming a lack of irreparable harm because "damages are not difficult to calculate" while also claiming Union Home's lost profits are too speculative, "particularly given the current volatility in the market."

While Union Home anxiously awaits Defendants' responses to its Interrogatories and Requests for Production of Documents—and anticipates the number of claims and defendants to grow due to the responses—there is already more than a sufficient basis to enjoin Defendants from

continuing to violate the Agreements' limited non-compete provisions.[1] This Court should grant Union Home's *Motion for Preliminary Injunction*.

## II.      LAW AND ARGUMENT

### A.    Defendants' arguments regarding the amount in controversy have already been raised in their Motion to Dismiss.

The first argument found in Defendants' Response—oddly, and perhaps, tellingly—revisits its *Reply in Support of Defendants' Motion to Dismiss*. (ECF No. 24.) Bottom line, Defendants incorrectly contend that the amount in controversy does not permit diversity jurisdiction. (*Id.*)

#### 1.    Union Home's legal fees should be considered in the amount in controversy as similar fee shifting provisions have been upheld and a factual record would be required to conclude otherwise.

Defendants argue the fee shifting provision in the Agreements is unenforceable and parlay that into an argument that Union Home's legal fees cannot be included in the amount in controversy. (*See* ECF No. 27, PageID #574-575.) Specifically, Defendants claim the Agreements fee shifting provision "has already been determined to be unenforceable" and cite to *Total Quality Logistics, LLC v. EDA Logistics, LLC*, No. 23-3713, 2024 WL 4372312, at *9 (6th Cir. 2024). (*Id.*, PageID # 575.) But this Court has not, nor has any other court ever, found the fee shifting provision to be unenforceable. Instead, the court in *Total Quality Logistics* analyzed the bargaining power of the respective parties in that case <u>after a full trial</u> to conclude the provision was a contract of adhesion. *Total Quality Logistics, LLC*, No. 23-3713, 2024 WL 4372312, *8-9. Legally, it is incorrect to say that fee shifting provisions, whether unilateral or otherwise, are never upheld by Ohio courts. For example, the Sixth Circuit in *Total Quality Logistics* cited to *2-J Supply, Inc. v. Garrett & Parker, L.L.C.*, 2015-Ohio-2757 (4th Dist.), and included the following parenthetical:

---

[1] Union Home anticipates supplementing the *Motion for Preliminary Injunction* or presenting significant additional evidence at a preliminary injunction hearing upon receipt of Defendants' responses to Interrogatories and Requests for Production of Documents and the conclusion of Defendants depositions.

"unilateral fee-shifting provision enforceable because there was 'no evidence that the attorney fee provisions in the parties' contract were ambiguous, the product of compulsion or duress, or [of] unequal bargaining power'". *Id.*, at *8-9. And Defendants' invitation to disregard the fee shifting provision at the inception of this matter would require the Court to evaluate each of their individual bargaining power—an analysis that would go well beyond the confines of a motion to dismiss.

> **2.    Union Home's lost profits should be considered in the amount in controversy despite Defendants' contradictory arguments.**

Defendants also attempt to entirely remove Union Home's lost profits from the amount in controversy analysis *via* one sentence at the conclusion of their argument. (ECF No. 27, PageID # 575.) But the Sixth Circuit has opined that such losses are properly considered even though they are difficult to establish. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992). Union Home, in response to Defendants' *Motion to Dismiss*, estimated a conservative floor of damages stemming from lost profits, providing ample grounds for diversity jurisdiction. (ECF No. 21, PageID # 439-440.) Defendants now, on one hand, argue estimated lost profits from Defendants' breaches are too speculative (ECF No. 27, PageID # 575), but on the other hand, argue those same damages are "not difficult to calculate." (*Id.*, PageID # 570, 581-582.) Of course, Defendant's cannot have it both ways. And the reality is that Union Home may be able to estimate a minimum floor of lost profits, but it is very difficult to put a price tag on the broader harm to its goodwill (*e.g.*, relationships), confidential information, reputation, and other intangibles.

> **B.    Defendants rely exclusively on inadmissible hearsay in an effort to establish tangential matters having little to do with their breaches of the limited noncompete provision.**

Defendants attach a single declaration to their Response. Notably, the declaration was not executed by any of the nine Defendants but, instead, was executed by a third party. (ECF No. 27-1, PageID # 588-597.) Kevin Caruana, the declarant, lacks personal knowledge of virtually

everything he seeks to establish. (*Id.*) Yet offers several legal conclusions. (*Id.*) While the Court may use "inadmissible evidence, including hearsay, if the evidence is appropriate given the character and objectives of the preliminary injunctive proceeding[,]" such use is inappropriate here. *Oruganti v. Noem*, No. 2:25-cv-00409-ALM-EPD, 2025 WL 1144560, at *4 (S.D. Ohio April 18, 2025) (alteration added). For example, Caruana consistently uses phrases like "I have come to understand," "I learned," "I also learned," and "My understanding is" before attributing wrongdoing to Union Home or noble conduct to Defendants. (*Id.*, PageID # 589.) Caruana also offers the Court his "understanding" that the way certain commissions were calculated for unspecified Defendants "violates federal law." (*Id.*, PageID # 588.) Caruana's declaration is inappropriate because it is based almost exclusively on hearsay and offers legal conclusions of a non-lawyer, is ambiguous (e.g., "many, if not all" of the Defendants believe certain things). And even if his accusation is accepted, miscalculating commissions—something Union Home denies— does not invalidate Defendants' obligations under the Agreements. The Agreements explicitly provide that raising a counterclaim—as routinely occurs in similar cases—will not invalidate the non-compete provision. For example, Ballew's Agreement provides: "The existence of any claim or cause of action by Employee against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the covenants in this Agreement." (ECF No. 1-1, PageID # 44, ¶ 12.) Caruana's declaration should be disregarded.

### C.    Union Home is likely to succeed on the merits of its breach of contract claim.

### 1.    The Agreements' limited noncompete provisions is enforceable.

The Agreements' limited noncompete provision is enforceable. In fact, the same or similar provisions have recently been enforced several times by this Court. *See e.g., Union Home Mortg. Corp. v. Fratelli*, No. 1:23-cv-857, 2025 WL 639315, at *20 (N.D. Ohio Feb. 27, 2025) (enjoining defendant from: "competing with Union home in the home mortgage banking or brokering

business as a loan officer or any similar role that directly or indirectly facilitates, originates, or generates loans in the following Pennsylvania counites"). Undeterred, Defendants presented the Court with slight differences in the Agreements at issue in an effort to invalidate or minimize all of them. (ECF No. 27, PageID # 575-80.) Union Home's response is two-fold: (1) when understood in context, each of the Agreements is reasonable and can be enforced as written; and (2) if any term of one of the Agreements is deemed to be over broad, the Court can readily reform it—as Defendants acknowledge. (ECF No. 27, PageID # 580.) Moreover, Union Home already proposed a narrowed, uniform approach whereby Defendants would only be restricted in certain counties in which they recently transacted business on behalf of Union Home. (ECF No. 23, Page ID # 480.)

First, Defendants attack the temporal restrictions of the limited noncompete provisions in the Agreements. (*Id.*, PageID # 576-77.) For example, Defendants chart the duration of the post-employment restrictions as follows: Ballew (3 months), Lichwick (3 months), Tabora (8.5 months), Webb (9 months), Berryman (10 months), Elias Gonzales (11 months), Pedro Gonzalez (11 months), Luu (20 months), and Rosenberry (20 months). (*Id.*, PageID # 577.) But Defendants erroneously suggest that these temporal restrictions are dramatically different from each other in an impermissible manner. (*Id.*) This overlooks that the temporal restrictions began when each agreement was signed. For example, the chart below sets forth the actual durations:

| Defendant | Job Title | Date Agreement Signed | Date Noncompete Expires | Duration |
|---|---|---|---|---|
| Ballew | Branch Manager | July 20, 2023 | April 30, 2025 | 21 months |
| Lichwick | Area Sales Manager | May 31, 2023 | April 30, 2025 | 23 months |
| Tabora | Loan Officer | September 25, 2023 | September 25, 2025 | 24 months |
| Webb | Branch Manager | November 8, 2023 | November 8, 2025 | 24 months |
| Elias Gonzales | Branch Manager | July 1, 2024 | December 31, 2025 | 17 months |
| Berryman | Area Sales Manager | October 14, 2024 | November 30, 2025 | 13 months |

| Pedro Gonzalez | Branch Manager | July 1, 2024 | December 21, 2025 | 17 months |
| Rosenberry | Branch Manager | October 1, 2024 | September 30, 2026 | 24 months |
| Luu | Team Lead | December 2, 2024 | October 2, 2026 | 22 months |

(*See generally* ECF Nos. 1, 1-1, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10.) The temporal scope of the noncompete provisions do not differ nearly as much as Defendants contend. Further, there is nothing improper or unreasonable about slight differences in how employees in different locations, with different job titles, and different business relationships are treated. If anything, this would suggest that the Agreements are individually negotiated and are not contracts of adhesion.[2] And restrictions between 13 and 24 months are routinely found reasonable. *Office Depot, Inc. v. Impact Office Prods., LLC*, No. 1:09-cv-2791, 2011 WL 4833117, at *16 (N.D. Ohio Oct. 12, 2011) (noting that courts applying Ohio law have upheld restrictive covenants up to five years). As stated in Union Home's opening brief, each Defendant should be enjoined for the remainder of the restrictive covenant and for an additional year in accordance with the terms of the Agreements <u>or</u>, alternatively, for one year from the date of the Court's order. (*See generally* ECF No. 23.) This Court has previously enforced the very same provision. *Fratelli*, 2025 WL 639315, at *13 ("The Court finds that extending the restricted period pursuant to Union Home's request and the terms of the Agreement is not unreasonable.").[3]

Second, Defendants argue that the restrictions for two Defendants—Elias Gonzales and Pedro Gonzalez—are too broad. (ECF No. 27, PageID # 577.) Specifically, Defendants argue that those two agreements—and only those two agreements—are slightly different than the others as

---

[2] This is further corroborated by the differing amounts of the retention bonuses in this matter.

[3] In the absence of such an extension, several of the Defendants will have completely avoided their obligations as their covenants recently expired. But "[i]n Ohio, a non-compete contract cannot expire while its signatories litigate its enforceability." *MP TotalCare Servs. v. Mattimoe*, 648 F. Supp. 2d 956, 964, n.6 (N.D. Ohio 2009).

they contain a nationwide restriction and define a "Competitive Entity" as a business operating or competing with Union Home in the same industry, and encompass vendors. (*Id.*)

Defendant's primary issue regarding these two agreements—their geographic scope—is a non-issue. Union Home is not seeking to enforce any agreement on a nationwide basis and has already addressed as much in the follow excerpt from its opening brief:

> Due to a few of the Agreements containing different geographic restrictions—and to simplify the issue for the Court—Union Home is amenable to <u>unifying the limited noncompetes to geographically restrict Defendants from competing on behalf of a competitor in the counties in which they originated loans for Union Home in the 36-month period prior to their resignation</u>.

(ECF No. 23, PageID # 480.)[4] Beyond that, Defendants take issue with the two underlined words in the following excerpt from these two agreements:

> Employee will not become employed as an employee of a [business <u>operating</u> or competing with the Company in the residential mortgage banking industry] or a <u>vendor</u> to the Company, in the same or similar capacity as the Employee is employed with the Company…

(*See generally* ECF Nos. 1-4, 1-5.) While perhaps inartful or redundant, it is reasonable to prohibit a former employee from working in the same or similar capacity of a business operating in the same industry. Likewise, preventing an employee from trading on their knowledge of business dealings with a vendor by not working in the same or similar capacity for it is not unreasonable. Notwithstanding, neither of these two words in two of the Agreements has any bearing on the present dispute and can be ignored with no impact on the outcome.

Third, Defendants argue Union Home "misapplied" the third *Raimonde* factor—whether Defendants are "possessed with" confidential information or trade secrets. (*Id.*, PageID # 578.)

---

[4] Note a nationwide non-compete agreement is not inherently unreasonable, and courts in Ohio have enforced them. *AK Steel Corp. v. Miskovich*, No. 1:14cv174, 2014 WL 11881030, at *3 (S.D. Ohio March 3, 2014); *Try Hours, Inc. v. Douville*, 2013-Ohio-53 (6th Dist.); *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 905 (S.D. Ohio June 16, 2017); *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No 1:21-cv-714, 2021 WL 5834299, at *3 (S.D. Ohio Dec. 8, 2021).

But the opposite is true. Defendants seek to avoid responsibility for breaching their non-compete obligations by alleging they are engaging in "honest, good faith, and fair competition" and citing to the fact that Union Home has not yet established they solicited customers or stole information.[5] (ECF No. 27, PageID # 572, 578.) Yet this is presently of no consequence. Defendants simply misunderstand that: (1) a non-compete is enforceable even if an employee did not violate other provisions of an agreement (*e.g.*, a non-solicitation or confidentiality provision); and (2) it is the exposure or access to an employer's goodwill and confidential information that provides legitimate grounds for the enforcement of a non-compete, not the subsequent theft or exploitation of it.

Defendants point the Court to *FirstEnergy Sols. Corp. v. Flerick*, 521 Fed. App'x 521, 526-527 (6th Cir. 2013), in support of this argument, but the case stands for the opposite proposition. (ECF No. 27, PageID # 578.) The following excerpt from *Flerick* illustrates what constitutes being "possessed with" confidential information:

> The district court found that Flerick possessed confidential information obtained during his employment with FirstEnergy. Flerick's supervisor testified that he received "training on complex systems" and "how we ultimately effectively work in [the] marketplace." R. 41, Hearing Tr. PageID # 908. He also indicated that Flerick had access to the components of FirstEnergy's pricing scheme. Flerick participated in weekly meetings in which the company's short- and long-term strategy was discussed. He had access to lists of prospective customers as well as to lists of closed sales that included the details of those deals. During Flerick's tenure with the company, it grew significantly, advancing from the number six supplier in its region to the number two supplier. An insider perspective into the policies and strategies of a successful company is very valuable to a competitor. Although Flerick contends that the prospective customer lists were based on public information and thus not confidential, the district court's conclusion that Flerick was privy to confidential information and retained knowledge of this information after resigning is not clearly erroneous.

*FirstEnergy Sols. Corp. v. Flerick*, 521 Fed. App'x 521, 526-527 (6th Cir. 2013) (emphasis added).

The *Flerick* court does <u>not</u> indicate that theft and improper use of confidential information is

---

[5] As noted above, Union Home is awaiting the majority of Defendants discovery responses before proceeding with depositions and fully expects that Defendants also violated their non-solicitation and confidentiality obligations.

required for enforcement. *Id.* Instead, as illustrated by the underlined portions of the excerpt, *Flerick* stands for the proposition that an employee who received training on, had access to, participated in meetings regarding, gained perspective about, or retained knowledge regarding confidential information is "possessed with it" as set forth in *Raimonde*. *Id.* And Union Home's *Memorandum in Support of its Motion for Preliminary Injunction* provided now undisputed evidence that Defendants were given access to and trusted with its confidential information. (ECF No. 23, PageID # 465-66, 470; *see also* ECF No. 27, PageID # 571, fn. 2 (indicating Defendants were not disputing the facts).)

Defendants' misunderstanding is revealed in the following excerpt from the Response:

. . . Plaintiff's Complaint and Memorandum are utterly devoid of any allegations that Defendants stole, let alone stole and are now improperly using, any of Plaintiff's confidential information. Thus, Defendants clearly are not now "possessed with confidential information or trade secrets."

(ECF No. 27, PageID # 578.) Again, the *Raimonde* factor analyzing whether an employee is "possessed with" confidential information does not require a theft followed by misuse to weigh in favor of enforcement of a non-compete provision. Thus, Union Home satisfied the third factor.

Fourth, Defendants argue the Agreements stifle their inherent skill and experience in the industry. (ECF No. 27, PageID # 578-79.) Defendants downplay their tenures with Union Home. (*Id.*) Yet more than half were with Union Home for at least the past three years, and several were with the company for between six and nine years. (*Id.*) Union Home is not seeking to prevent anyone from working in their chosen profession. Instead, it is seeking to prevent them from working in the same capacity it did for Union Home in the same counties for a finite period. If Defendants were so skillful—and did not need to rely upon the goodwill and information developed and enhanced during their time at Union Home—they could readily (and permissibly) perform the exact same work in different counties. For example, Rosenberry worked for Union

Home for eight and a half years. (*See generally* ECF No. 27, PageID # 579 (chart showing tenure).) And he was exposed to vast amounts of Union Home's confidential information, including details regarding customers, prospects, and referral sources as a result. He also cultivated new relationships and enhanced older relationships with those same customers, prospects, and referral sources. Union Home is not concerned with his inherent skill and experience, it is concerned with him trading on its information and goodwill in the same area for a direct competitor.

Fifth, Defendants only argue that the Agreements' noncompete provision will bar the sole means of support of Elias Gonzales and Pedro Gonzalez. (ECF No. 27, PageID # 579.) Thus, Defendants admit this factor favors Union Home for the remaining Defendants. But, as discussed above, this Court has the power to modify such restrictions. And Union Home has stated it is amenable to unifying the restrictions to counties in which Defendants originated loans for Union Home in the 36-month period before their resignation. (ECF No. 23, PageID # 480.) This would align the geographic scope of the Agreements and eliminate this argument.

In sum, Union Home's covenants restrict Defendants' immediate efforts to compete in the same market using goodwill and confidential information developed or enhanced while with Union Home. Defendants have breached their Agreements restrictive covenant via their employment with a direct competitor of Union Home. And, when weighed, the *Raimonde* factors heavily favor the enforcement of the non-compete provisions.

### 2.     Defendants indisputably breached the limited noncompete provision.

Union Home's opening brief provided ample evidence that Defendants have violated the non-compete provisions of the Agreements. Further, Union Home served Requests for Admission on Defendants on May 9, 2025. Defendants recently responded and those responses provide even more evidence of Defendants' breaches. A true and accurate copy of Defendants' Responses to Union Home's Requests for Admission are attached hereto, incorporated by reference herein, and

marked as **Exhibit A**. For example, all Defendants—except for Lichwick—admitted to having originated one or more loans for Union Home's competitor, American Pacific Mortgage Corporation ("American Pacific"). Ex. A, pp. 5, 12, 19, 26, 32-33, 40, 47, 54, 61. And all Defendants work in the same or similar capacity for American Pacific as they did for Union Home.[6] Ex. A, pp. 4, 11-12, 18, 25, 32-33, 39, 47, 53-54, 60.

### 3. Union Home will suffer irreparable harm absent the Court entering an order granting Union Home's request for an injunction.

Defendants then disregard the irreparable harm they are inflicting upon Union Home, but not by denying their underlying wrongdoing. (*See generally* ECF No. 27, PageID # 581-84.) Instead, they argue that Union Home's monetary damages are readily calculable (after earlier arguing they were speculative), that its claims "fall squarely within a typical breach of contract action" for which a preliminary injunction is not the "classic remedy," and Union Home filed suit in a timely manner, but delayed in requesting injunctive relief. (*Id.*)

Union Home's damages cannot be fully or adequately remedied by money. While Defendants cite to a chart of Union Home's estimated lost profits chart (ECF No. 27, PageID # 581-82), they ignore the fact that the estimated amount does not include a loss of goodwill with customers and referral sources or the harm from the exploitation of confidential information by nine former employees all in unison. (ECF No. 21, PageID # 441; *see also* ECF No. 21-2, PageID # 451.) Union Home cannot begin to estimate these losses. (ECF No. 21-2, PageID # 451.) Defendants' reliance on *Automation & Modular Components, Inc. v. Blackford*, No. 23-cv-12420,

---

[6] Defendant Lichwick attempted to avoid admitting to the request by qualifying his response and indicating he has the same job overseeing production of loans at a different scale and geography. Defendant Tabora tried to avoid the request by indicating he has a different job at American Pacific; yet he admitted that he is licensed to originate loans and originates loans on behalf of American Pacific. And Defendant Berryman sought to avoid admitting the request by indicating he was a branch manager for Union Home and a loan officer for American Pacific but neglects to admit that, even as a branch manager for Union Home, he was a producing branch manager (i.e., he originated loans).

2023 WL 7276487 (E.D. Mich. Nov. 3, 2023), is misplaced. (ECF No. 27, Page ID # 582.) For example, *Blackford* discusses *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372 (6th Cir. 2023), where the Sixth Circuit upheld a trial court's entry of an injunction when the defendant was familiar with the employer's business strategies, closed millions of dollars in deals, and was involved from a customer-facing perspective. *Blackford*, No. 23-cv-12420, 2023 WL 7276487, at *6. Defendants are like the defendant in *Styker*. They are familiar with Union Home's business strategies, closed millions of dollars' worth of loans during their employment with Union Home and were the face of Union Home's business with customers and referral sources. (*See generally* ECF No. 21, PageID # 440 (where the chart shows all Defendants having closed millions in loans in just 2024).) Union Home has shown it will suffer irreparable harm if injunctive relief is denied.

Defendants also argue that this is a "typical" breach of contract action and money damages, not an injunction is the "classic" remedy. (ECF No. 27, PageID # 582.) This ignores that "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). In this case, Union Home has and will continue to suffer irreparable harm as Defendants are currently soliciting and diverting business to a competitor in the same capacity and location armed with Union Home's goodwill and knowledge of its confidential information. Defendants have responded to Union Home's Requests for Admission and, in doing so, most Defendants have acknowledged working for a competitor in the same or similar capacity and originating mortgages in the same area, with several admitting to already having taken referrals from the same referral sources relied upon at Union Home. *See generally* Ex. A, pp. 6, 13, 20, 27, 41, 48, 55, 62.

Defendants resigned their employment with Union Home in January and February 2025, and this lawsuit was promptly filed on February 17, 2025. (ECF No. 23, PageID # 483.) Union

Home's counsel then tendered a proposed report of parties planning meeting to Defendants' counsel on March 6, 2025. The reason for this was to initiate discovery as soon as possible. Defendants' counsel did not respond to this correspondence. Union Home then began to conduct its own investigation by scouring social media and other publicly available resources for the activities of all nine Defendants. Defendants did not respond to the Complaint until April 14, 2025, by moving to dismiss the case. (*See generally* ECF No. 8.) Defendants also sought to avoid answering the Complaint, but this was rejected by the Court and nine Answers were filed on April 18, 2025. (ECF No. 9; *see also* the Court's April 14, 2024, Order Denying Extension (non-document order).) Candidly, Union Home wanted to secure either initial discovery responses or, at a minimum, the nine Answers, before filing its Motion for Preliminary Injunction. Union Home filed the instant *Motion for Preliminary Injunction* on May 1, 2025—less than two weeks after the Complaint was answered and while responding to Defendants' *Motion to Dismiss*. (*Compare* ECF Nos. 10-18 (filed April 18, 2025) and ECF No. 21 (filed on April 28, 2025) *with* ECF No. 23 (filed May 1, 2025.) There simply was no delay.

Even ignoring multiple filings and assuming Union Home had just waited a little over two months to file its Motion, Defendants rely heavily on a 40-year-old case from the Second Circuit to argue that a 70-day delay in filing a preliminary injunction motion is sufficient to undermine a claim of irreparable harm and deny the injunction. Defendants do not expand on that case at all— and for good reason. Most notably, within the Sixth Circuit it has been noted that for more than two decades cases *outside the Second Circuit* have held that a party should be "confident" in its ability to establish irreparable harm following a delay of three months or less. *Lincoln Elec. Co. v. Harbor Freight Tools USA, Inc.*, No 1:17 CV 2329, 2018 WL 10809987, *14-15 (N.D. Ohio Aug. 15, 2018) (citing *CLT Logs. V. River West Brands*, 777 F. Supp. 2d 1052, 1071 (E.D. Mich. Mar.

4, 2011) (relying upon a survey of case law concluding that "outside of the Second Circuit, the cases decided since 2002 indicate that plaintiffs who delay three months or less in seeking preliminary injunctive relief can . . . be confident they can show irreparable harm.") (cleaned up)). In fact, attempting to scrutinize "a two month delay is on the extreme end of the spectrum" and "it appears that only courts in the Second Circuit hold plaintiffs to such a demanding standard." *CLT Logistics*, 777 F. Supp. 2d at 1071. Bottom line, Union Home's <u>brief</u> delay in filing its *Motion for Preliminary Injunction* was entirely justified and does not bar injunctive relief.

### 4. Defendants acknowledge the Court's authority to reform noncompetes but then suggest the provision must be disregarded entirely.

Defendants acknowledge that, under Ohio law, if a covenant must be narrowed to be enforced, a court is empowered to do so. (ECF No. 27, PageID # 580.) The Agreements in this case contain four primary covenants. They include a non-compete provision, a non-solicitation of customers provision, a non-solicitation of employees provision, and a confidentiality provision. Despite Defendants' acknowledgment, they do not propose the deletion of a word or phrase or the narrowing of a geographic scope. Instead, they suggest "it is clear the restrictive covenants, at most, must be significantly limited to the following: a confidentiality provision; and a non-solicitation of customers provision." (*Id.*) That is, the "narrowing" Defendants propose is to entirely jettison the non-compete provision.

The reason for Defendants proposal is obvious. Referral sources, typically realtors, are the lifeblood of the mortgage business. Not surprisingly, substantial time, effort, and resources go into cultivating and enhancing the goodwill (e.g., relationships) between Union Home representatives and those referral sources. The non-compete provisions that Union Home seeks to enforce protects that goodwill as well as the goodwill with customers and prospective customers. This is a legitimate interest that would be entirely undermined by Defendants' proposed narrowing.

Moreover, Defendants' familiarity with Union Home's confidential information—essentially its playbook—provides them with an unavoidable competitive advantage. As a very rudimentary example, without the benefit of discovery, two Defendants have published a video explaining that Union Home's competitor offers "products" and "programs" that better serve their specific "clients and business partners" (e.g., referral sources). (ECF No. 23, PageID # 475.)

Defendants' proposal would permit Defendants to trade on the relationships that were established or enhanced at Union Home and rely upon their knowledge of Union Home's innerworkings, including its "clients and business partners," to redirect the flow of business from Union Home to a competitor. Defendants' responses to Union Home's Requests for Admission reveal this is precisely what is occurring.

**5.    An injunction would not cause harm to third parties and would serve the public's interest in preserving contractual obligations.**

Defendants only argument that the public would be harmed is that homeowners and real estate agents would be without their "chosen loan officer for 14 or more months." (ECF No. 27, PageID # 585.) But that assumes homeowners and realtor referral sources have no equivalent options. Yet Defendants have provided "no indication that the public will be deprived of" loan officers if Defendants are "prohibited from competing against" Union Home. *Flerick*, 521 Fed. App'x at 527. Defendants are not third parties, so the inclusion of themselves is inapposite. Union Home has shown this Court that the public's interest favors preserving contractual relations and preventing unfair competition. (ECF No. 23, PageID # 485-86.)

## III.    CONCLUSION

For the reasons explained above, this Court should grant Union Home's Motion for Preliminary Injunction and enter the injunction sought in its opening brief.

Dated: <u>June 19, 2025</u>.

Respectfully submitted,

**BARNES & THORNBURG LLP**

<u>/s/ Jason T. Clagg</u>
Jason T. Clagg, Ohio Atty. No. 97303
Cody D. Woods, Ohio Atty. No. 103642
888 S. Harrison St., Suite 600
Fort Wayne, Indiana 46802
Phone: 260-423-9440
Fax: 260-424-8316
jason.clagg@btlaw.com
cwoods@btlaw.com

*Attorneys for Plaintiff*
*Union Home Mortgage Corp.*

## <u>CERTIFICATE OF LOCAL RULE 7.1 AND COURT ORDER COMPLIANCE</u>

I hereby certify that this Reply adheres to the page limitations set forth in Local Rule 7.1for standard cases in conjunction with the Court's June 17, 2025, Order.

<u>/s/ Jason T. Clagg</u>
Jason T. Clagg

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2025, a copy of the above was electronically filed with the Court and was served via the CM/ECF system to the following counsel of record for Defendants:

Michael P. O'Donnell
Andrew J. Cleves
Lauri P. Hartmann
FRANTZ WARD LLP
modonnell@frantzward.com
acleves@frantzward.com
lhartmann@frantzward.com

<u>/s/ Jason T. Clagg</u>
Jason T. Clagg