UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | ) | Case No. 1:25-cv-00318 |
| | ) | |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) | |
| | ) | Magistrate Judge |
| v. | ) | Jennifer Dowdell Armstrong |
| | ) | |
| BALLEW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# OPINION AND ORDER

Plaintiff Union Home Mortgage brings suit against nine individual Defendants, all of whom are previous employees who left the company at various times between January 2025 and February 2025. Defendants move to dismiss for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

By way of background, each Defendant entered into an employment agreement with Union Home Mortgage. (ECF No. 1, ¶¶ 29, 48, 67, 86, 105, 124, 146, 168, 190, PageID #5–31.) All the employment agreements contained a non-competition agreement. (*Id.*, ¶¶ 37, 56, 75, 94, 113, 132, 154, 175, 197, PageID #6–32.) Additionally, several Defendants—specifically, Hong (Bobby) Luu, Blain Rosenberry, George Tabora, and Robert Webb had contractual provisions that included a signing bonus which would fully vest after two years. (*Id.*, ¶¶ 134, 156, 177, 199, PageID #22–33.)

On January 2, 2025, Craig Franczak, a regional manager with Union Home Mortgage, resigned and joined American Pacific Mortgage Corporation. (*Id.*, ¶ 23, PageID #4.) His employment agreement included covenants that he would not directly or indirectly solicit employees of Union Home Mortgage for a period of two years after the end of his employment. (*Id.*, ¶ 25, PageID #4.) Following Franczak's departure, from January 2025 to February 2025, nine other employees of Union Home Mortgage left the company and began working at American Pacific Mortgage Corporation. (*Id.*, ¶ 27, PageID #5.) All but one of these nine employees previously worked under Franczak, who is not named as a defendant in this case. (*Id.*)

## ANALYSIS

Arguing that the Court lacks subject matter jurisdiction, Defendants move to dismiss. (ECF No. 8.) District courts have diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different States. 28 U.S.C. § 1332(a). The burden of persuasion for establishing diversity jurisdiction remains on the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)).

Here, it is undisputed that the parties are diverse. Union Home Mortgage is an Ohio company with its principal place of business in Ohio. (ECF No. 1, ¶ 2, PageID #1.) Defendants are residents of Pennsylvania, Virginia, and North Carolina. (*Id.*, ¶¶ 3–11, PageID #1–2.) The dispute, then, turns on the amount in controversy, which must be over $75,000 per Defendant. Claims against individual defendants cannot

be aggregated to meet the amount-in-controversy requirement. *See Fechheimer Bros. Co. v. Barnwasser*, 146 F.2d 974, 976 (6th Cir. 1945) (citing *Sovereign Camp, Woodmen of the World v. O'Neill*, 266 U.S. 292, 295 (1924)). Therefore, Plaintiff must establish the amount in controversy as to each Defendant separately.

When it comes to the amount in controversy, the amount that the plaintiff alleges on the face of the complaint controls if the plaintiff makes the claim in good faith. Unless the defendant can show to a legal certainty that "the claim is really for less than the jurisdictional amount," courts generally accept the good-faith allegations of the complaint. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). The amount in controversy is assessed as of the time that the complaint is filed. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920 n.1 (6th Cir. 2000) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)). In the complaint, Plaintiff does not allege a specific amount in controversy (other than the bonuses). (ECF No. 1, ¶ 235, PageID #38–40.) Instead, Plaintiff primarily seeks injunctive relief. To invoke the Court's subject matter jurisdiction, then, Plaintiff seeks to establish the amount in controversy through three different avenues: (1) repayment of bonuses that certain Defendants owe; (2) attorneys' fees; and (3) the value of the injunction to enforce the restrictive covenants at issue, measured in lost profits. The Court addresses each in turn.

1. **Bonuses**

Plaintiff brings breach of contract claims against four Defendants, alleging that these Defendants breached their duty to repay unearned bonuses. (ECF No. 1, ¶ 227, PageID #36.) These are the four Defendants mentioned by name earlier.

3

| Defendant | Date required to remain employed with Union Home Mortgage to retain entire bonus | Last date of employment with Union Home Mortgage |
|---|---|---|
| Bobby Luu | December 2, 2026 | February 3, 2025 |
| Blain Rosenberry | October 1, 2026 | January 31, 2025 |
| George Tabora | September 25, 2025 | January 9, 2025 |
| Robert Webb | November 8, 2025 | January 31, 2025 |

When the lawsuit was filed, these bonuses were outstanding and can be considered in determining the amount in controversy. *See Holland v. Lowe's Home Centers, Inc.*, 198 F.3d 245 (6th Cir. 1999) ("The amount in controversy is examined at the time the complaint is filed to determine if the statutory limit has been satisfied."). The amounts for each Defendant are as follows:

Bobby Luu – $36,872.90

Blain Rosenberry – $22,178.79

George Tabora – $7,300.90

Robert Webb – $43,291.83

(ECF No. 1, ¶ 230, PageID #37.) Obviously, the amount of the bonus for each Defendant does not establish the amount in controversy. And these amounts cannot be aggregated to reach it.

**2.     Attorneys' Fees**

If attorneys' fees are provided for in a contract or mandated by statute, reasonable attorneys' fees may be included for the purposes of establishing the amount in controversy. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir.

4

2007). Here, the agreements allow Union Home Mortgage to recover its attorneys' fees to enforce the agreement. For example, Mr. Ballew's agreement, attached to the complaint as Exhibit A, provides in relevant part in Paragraph 13: "Employee shall be liable for any attorneys' fees expended by the Company to enforce this Agreement." (ECF No. 1-1, ¶ 13, PageID #44.)

But this provision fails to meet the amount in controversy for two separate reasons. First, Plaintiff provides a declaration from its counsel claiming that Plaintiff incurred $53,344 as of April 28, 2025 in attorneys' fees and discussing the expected amounts of fees resulting from the litigation. (ECF No. 21-1.) Assuming that number doubled since then, that amount would still need to be allocated among nine different Defendants such that, even with the bonus payments for the four Defendants mentioned, the amount in controversy is still not met. Moreover, at this point, the calculation of fees remains speculative. The parties cite no authority allowing the Court to consider "the mere *possibility* of attorney fees to buttress the amount in controversy." *Magnum Asset Acquisition, LLC v. Green Energy Techs., LLC*, No. 5:19-cv-2930, 2020 WL 377699, at *3 (N.D. Ohio Jan. 23, 2020).

Second, recently, the Sixth Circuit affirmed the Southern District of Ohio's decision not to enforce a unilateral attorneys' fees provision like the one at issue here. In *Total Quality Logistics, LLC v. EDA Logistics LLC*, 685 F. Supp. 3d 563, 581–83 (S.D. Ohio 2023), the district court held that a fee-shifting provision in an employment agreement that allowed one party to recover its fees but not the other is unenforceable under Ohio law. Indeed, the Ohio Supreme Court spoke to the issue

5

in *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 9. "[A]greements to pay attorney fees in a 'contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms,' are not enforceable." *Id.* at 401 (quoting *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 33 Ohio St. 3d 32, 514 N.E.2d 702, 707 n.7 (Ohio 1987)). The Southern District applied that rule of Ohio law to an employment agreement, and the Sixth Circuit affirmed. *See Total Quality Logistics, LLC v. EDA Logistics LLC*, No. 23-3713, 2024 WL 4372312, at \*8–9 (6th Cir. Oct. 2, 2024). In doing so, the Sixth Circuit noted the practice of the Ohio courts in not enforcing unilateral fee-shifting provisions. *Id.* at \*9. Based on the review of Ohio law in the Southern District's decision and the Sixth Circuit's ruling affirming it, the Court agrees that Ohio law will not enforce the unilateral fee-shifting provisions at issue here and, therefore, does not take attorneys' fees into account in determining the amount in controversy.

3.  **Lost Profits**

In actions for injunctive relief, the amount in controversy measures "the value of the object of the litigation"; that is, the value to the plaintiff of conducting its business free from the activity sought to be enjoined. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) (citing C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3708, at 143–44 (2d.ed. 1985)). The costs of complying with an injunction may establish the amount in controversy. *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006), *abrogated on other grounds by Hertz*, 559 U.S. at 77). But the Sixth Circuit has never held that

the costs imposed on a defendant can satisfy the amount in controversy. *Stryker Emp't Co., Ltd. Liab. Co. v. Abbas*, 60 F.4th 372, 381 (6th Cir. 2023).

To establish the value of a non-compete, courts "will usually look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Transtar Indus., LLC v. Lester*, No. 1:19-cv-1230, 2019 WL 2410855, at *2 (N.D. Ohio June 7, 2019) (quoting *Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.*, 410 F. Supp. 2d 665, 669 (N.D. Ohio 2005)); *see also FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013). Typically, that measure supports a corresponding amount of lost sales. *See Basicomputer Corp. v. Scott,* 791 F. Supp. 1280, 1284 (N.D. Ohio 1991). Courts may also consider the "value of the plaintiff's lost revenue, the value of the future effect of a defendant's reach upon all the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment." *Id.* at 1286. In short, a complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses. *See Hunt*, 432 U.S. at 348; *BasiComputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992).

Plaintiff seeks injunctive relief to bar Defendants from continuing to work for American Pacific Mortgage Corporation. Plaintiff concedes that its "competitive losses cannot be quantified to a specific dollar amount." (ECF No. 21, PageID #439.) That is why each Defendant "agree[d] that such violation [of his employment contract] will cause irreparable harm" to Union Home Mortgage and "consents to the

7

issuance of a restraining order and/or an injunction." (*See, e.g.*, ECF No. 1-1, ¶ 13, PageID #44.) But entitlement to an injunction, even by agreement, does not establish subject matter jurisdiction.

To carry its burden of establishing the amount in controversy, Plaintiff supplied the declaration of Alex Cribari, a licensing and retail sales quality control manager for Union Home Mortgage. (ECF No. 21-2.) Cribari estimated the minimum competitive damages by reviewing the volume of loans each Defendant originated in 2024, dividing that number by twelve to obtain a monthly average, then using 2.5% of that figure to estimate lost profits. (*Id.*, ¶ 5, PageID #450.) Then, she multiplied that estimated monthly profit figure by fourteen months, which represents the shortest duration of the injunctions sought. (*Id.*) To understand the basis for her calculations, the Court heard testimony from Cribari and the parties presented additional evidence.

In her testimony, Cribari confirmed that no employees replaced the nine Defendants who left Union Home mortgage and that Union Home Mortgage closed essentially no loans that replaced the ones that these Defendants originated in 2024 following their departures. In this regard, this case looks similar to *BasicComputer*. There, the record showed that three individual defendants who were responsible for $500,000 in unreplaced sales left the company, which then filed suit. The district court estimated the object of the litigation by reference to the profits lost, 791 F. Supp. at 1284, 1286, and the Sixth Circuit affirmed the use of this methodology, 973 F.2d at 510. In making this determination, the Court notes that the declaration of Alex

8

Cribari on its face fails to establish the key facts that bring this case into line with *BasicComputer*. But her testimony, which the Court finds credible, did.

That methodology leaves the question whether the amount in controversy is satisfied as to each Defendant. Using the information that Cribari provided in her declaration and testimony, the amount in controversy is satisfied measured by lost profits as to all Defendants except for Mr. Tabora and Mr. Lichwick. For Mr. Tabora, the estimate from Cribari shows $72,377 in lost profits. But he also had an unearned bonus to repay in the amount of $7,300.90, bringing him above the jurisdictional amount in controversy. For Mr. Lichwick, the calculation becomes more difficult. His estimated lost profits comes $45,138. Cribari testified that Mr. Lichwick's responsibilities include a number of responsibilities difficult to quantify or calculate strictly in dollars and cents. Fair enough. But Plaintiff has made no effort to value those other services and amounts. Indeed, as of the date of her declaration and in her testimony, Cribari was unable "to precisely calculate [Union Home Mortgage's] damages from the loss of goodwill from its customers and referral sources or other reputational harm." (ECF No. 21-2, ¶ 8, PageID #451.) Even calculating the lost profits for Mr. Lichwick, using Cribari's methodology, fails to bring those figures above the amount in controversy. It so appears to a legal certainty.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss. Specifically, the Court determines that it lacks subject matter jurisdiction over Union Home Mortgage's claims against Nicholas

Lichwick. Therefore, pursuant to Rule 21, the Court severs Plaintiff's claims against him and dismisses those claims for lack of subject matter jurisdiction.

**SO ORDERED.**

Dated: August 21, 2025

                                                            J. Philip Calabrese
                                                            United States District Judge
                                                            Northern District of Ohio