**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:25-cv-00318-JPC |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL BALLEW, ANDY (CARL) | ) | |
| BERRYMAN, ELIAS GONZALES, | ) | |
| PEDRO GONZALEZ, HONG (BOBBY) LUU, | ) | |
| BLAIN ROSENBERRY, GEORGE TABORA, | ) | |
| ROBERT WEBB, and CRAIG FRANCZAK, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S POST-HEARING BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Pages**

I.   INTRODUCTION .......................................................................................... 1

II.  FACTUAL BACKGROUND & HEARING TESTIMONY ......................... 2

      A.     The template Agreement's noncompete provision ..................................... 2

      B.     The template Agreement's nonsolicitation provisions ............................. 3

      C.     The template Agreement's provision on Confidential Information......... 5

      D.     Other miscellaneous provisions in the template Agreement................... 6

      E.     Union Home's use of restrictive covenants in Defendants' Agreements ................................................................................................................. 8

      F.     Defendants and American Pacific's representative admitted Defendants are competing in violation of all the restrictive covenants in the Agreements ................................................................................. 10

III. ARGUMENT.............................................................................................. 18

      A.     Union Home has a strong likelihood of success on the merits .............. 18

            1.Defendants' Agreements with Union Home are enforceable ................................................................................................................. 20

            2.The Hearing provided an abundance of evidence Defendants breached their Agreements in new ways ..................................... 26

      B.     Union Home will suffer irreparable harm if injunctive relief is not granted ..................................................................................................... 27

      C.     An injunction will not harm third parties. ................................................ 29

      D.     Any bond should be *de minimis*. ............................................................. 30

      E.     Defendants' newly revealed counterclaims are without merit and do not invalidate the Agreement or "explain away" Defendants' violations of the Agreements................................................................... 31

      F.     The Terms of the Requested Preliminary Injunction.............................. 34

IV. CONCLUSION .......................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                              **<u>Page(s)</u>**

*Basicomputer Corp. v. Scott*,
    973 F.2d 507 (6th Cir. 1992) .......................................................................... 27-28

*Bosley v. WildWetT.com*,
    310 F. Supp. 2d 914, 936 (N.D. Ohio 2004) ........................................................ 30

*Cretor Construction Equipment LLC v. Gibson*,
    738 F. Supp. 3d 950 (S.D. Ohio July 1, 2024) ................................................. 22-23

*Eng'g Excellence, Inc. v. Meola*,
    2002-Ohio-5412 (10th Dist.) ........................................................................... 23-24

*Fall v. Copperweld Specialty Steel Co.*,
    380 F. Supp. 1277 (N.D. Ohio 1974) ..................................................................... 34

*Hollar v. RJ Coffey Cup, LLC*,
    505 F. Supp. 2d 439, 454 (N.D. Ohio July 20, 2007) ........................................... 33

*In re Eagle-Picher Indus.*, Inc.,
    963 F.2d 855, 859 (6th Cir. 1992) ....................................................................... 21

*Kelly Services, Inc. v. Noretto*,
    495 f. Supp. 2d 645, 659 (E.D. Mich. July 9, 2007) ............................................ 28

*Lucarell v. Nationwide Mut. Ins.*,
    2018-Ohio-15 (Ohio 2018) ....................................................................... 18-19, 26

*Mike McGarry & Sons, Inc.*,
    2006-Ohio-1759 (8th Dist.) ................................................................................. 29

*Office Depot, Inc. v. Impact Office Prods. LLC*,
    No. 1:09-cv-2791, 2011 WL 4833117 (N.D. Ohio 2011)........................................ 28

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*,
    305 F.3d 566, 573 (6th Cir. 2002) ....................................................................... 21

*PolyOne Corp. v. Kutka*,
    67 F. Supp. 3d 863 (N.D. Ohio 2014) ................................................................. 18

*Raimonde v. Van Vlerah*,
    325 N.E.2d 544 (1975) ................................................................................*passim*

*Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*,
   119 F.3d 393(6th Cir. 1997) ................................................................. 18

*Swink v. Greater Cleveland Regional Transit Auth.*,
   2009-Ohio-6105, ¶ 19 (8th Dist.) ........................................................... 33

*Total Quality Logistics, LLC v. EDA Logistics LLC*,
   685 F. Supp. 3d 563, 579 (S.D. Ohio July 31, 2023) ...................................... 28-29

*Turbo Tek Enterprises, Inc. v. F.P. Feature Products, Inc.*,
   1987 WL 19558 (N.D. Ill. Oct. 7, 1987) ................................................... 30

*Union Home Mortg. Corp., v. Fratelli*,
   No. 1:23-cv-857, 2025 WL 639315 (N. D. Ohio 2025) ................................ 20-21, 23

*Union Home Mortgage Corp. v. Payne*,
   No. 1:20-cv-26, 2020 WL 4282309 (N.D. Ohio 2020) ........................................ 28

*UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*,
   2001-Ohio-8779 (10th Dist.) ............................................................ 19, 29

*V&M Star Steel v. Centimark Corp.*,
   678 F.3d 459 (6th Cir. 2012) ........................................................... 18, 26

## Other Authorities

Fed. R. Civ. P. 65(c) ...................................................................... 30

https://www.apmortgage.com/joinapm-blog/as-a-mortgage-loan-
   originator-who-you-work-for-matters. ...................................................... 14

https://www.ftc.gov/news-events/news/press-releases/2025/09/federal-
   trade-commission-files-accede-vacatur-non-compete-clause-rule ........................ 26

## I.    INTRODUCTION

American Pacific solicited Union Home's former Regional Sales Manager, Craig Franczak, to leave his employment of almost a decade and accept the same role at American Pacific. Immediately thereafter, American Pacific successfully solicited more than a dozen Union Home loan officers who reported to Franczak—including all but one of the Defendants—to resign their employment with Union Home and begin competing on behalf of American Pacific. This is true despite American Pacific being well aware Defendants were bound by restrictive covenants, including a limited non-compete. American Pacific has allowed each of the Defendants to blatantly breach their Agreements with Union Home and promised to indemnify them from the consequences of their actions. None of this is in dispute.

Defendants have essentially operated as if the restrictive covenants in their Agreements did not exist. For instance, Defendants are originating loans in the prohibited geographic areas and are soliciting and accepting business from Union Home's customers. When American Pacific's General Counsel testified at the Preliminary Injunction Hearing (the "Hearing"), he was unequivocal on this dispositive issue:

> Q:    Are the defendants competing with Union Home on behalf of American Pacific?
>
> A:    Yes.

(ECF No. 50, PageID # 1162.) The testimony at the Hearing established American Pacific and Defendants know they are violating the Agreements and have no

intention of abiding by their contractual obligations unless the Court forces them to do so. As explained in detail below, Union Home is entitled to injunctive relief.

## II.  FACTUAL BACKGROUND & HEARING TESTIMONY

### A. The template Agreement's noncompete provision

At the conclusion of the Hearing, the Court requested the parties use Ballew's Agreement as a template and explain any differences in the other Defendants' Agreements. (ECF No. 50, PageID # 1186-87.) Defendant Ballew's Agreement's noncompete provision is as follows:

> <u>Limited Non-Compete</u>. Employee agrees they will not engage in Competitive Activity on behalf of a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and April 30, 2025; *the "Restricted Area" shall mean any state in which Employee is legally able to originate or broker mortgages and has done so on behalf of the Company in the thirty-six (36) months with the Company*; a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business; and "Competitive Activity" shall be acting in the same or similar capacity in which Employee worked for the Company and shall include, but not be limited to performing the functions of a loan officer, such as by, directly or indirectly, originating or brokering mortgages for real estate located in the Restricted Area. For the avoidance of doubt, the fact that Employee's office after the employment with the Company concludes is located outside of the Restricted Area does not resolve whether Employee has engaged in Competitive Activity in violation of this covenant. Further, during the Restricted Period and for one year thereafter, Employee shall not have any ownership interest in a Competitive Entity, whether as a shareholder, member, partner or otherwise, within the Restricted Area.

(ECF No. 23, PageID # 468; *see also* ECF No. 51-1, PageID # 1249 (emphasis added).) Berryman, Tabora and Webb's noncompete provisions are identical to Ballew's noncompete. (ECF No. 23, PageID # 468.) Rosenberry and Luu's noncompete provisions are similar in language to Ballew's Agreement except they include an

alternative geographic limitation of a 100-mile radius from the office to which Union Home assigned them. (ECF No. 23, PageID # 467.) Elias Gonzales and Pedro Gonzalez's noncompete provisions also differ geographically from Ballew's noncompete as they prohibit them from becoming employed in the same or similar capacity for a competitive entity throughout the country, including in any state in which Union Home does business or within 100 miles of any of Union Home's offices. (ECF No. 23, PageID # 469.) To eliminate these differences, and generally narrow the geographic scope, Union Home has proposed unifying the limited noncompete provisions to restrict Defendants from competing on behalf of a competitor in only those city/counties in which they originated loans for Union Home in the 36-month period before their resignation. (ECF No. 23, PageID # 480; ECF No. 30, PageID # 613.)

Defendants all have different dates when their Agreements' noncompete provision expires, but those differences are irrelevant as none of them expired when this lawsuit was filed. (ECF No. 51-1, PageID # 1249-50; ECF No. 51-3, PageID # 1257; ECF No. 51-4, PageID # 1263; ECF No. 51-5, PageID # 1270; ECF No. 51-7, PageID # 1284; ECF No. 51-8, PageID # 1290; ECF No. 51-9, PageID # 1295-96; ECF No. 51-10, PageID # 1300.) As stated below in Section II, Part D., the Agreements have additional language providing for a one-year extension after the Court enters an order enforcing the Agreements.

## B. The template Agreement's nonsolicitation provisions

Ballew's Agreement contains a provision barring the solicitation of Union Home's customers:

> <u>Limited Non-Solicitation of Customers</u>. During the Restricted Period and for two (2) years thereafter, Employee will not, on behalf of themselves or a Competitive Entity, directly or indirectly, *solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of the Company: (i) with whom Employee had contact; or (ii) about whom Employee obtained or had access to Confidential Information, in conjunction with their employment in the thirty-six (36) months* preceding the termination of Employee's employment with the Company.

(ECF No. 51-1, PageID # 1249 (emphasis added).) Berryman, Tabora, and Webb's nonsolicit of customers provisions are identical to Ballew's except their provisions only prohibit them from soliciting current or prospective customers for one year. (ECF No. 51-3, PageID # 1256; ECF No. 51-9, PageID # 1295; ECF No. 50-10, PageID # 1300.) Elias Gonzales, Pedro Gonzales, Luu, and Rosenberry's nonsolicit of customers provisions are identical to Ballew's provision but prohibit solicitation of current or prospective customers 1) with whom they have taken a mortgage loan application while employed at Union Home or 2) whose mortgage loan is serviced by Union Home. (ECF No. 51-4, PageID # 1263; ECF No. 51-5, PageID # 1270; ECF No. 51-7, PageID # 1284; ECF No. 51-8, PageID # 1290.) To unify these provisions, Union Home suggested Defendants be prohibited from soliciting or accepting business from Union Home's current and prospective customers with whom they had contact or about whom they obtained confidential information in conjunction with their employment at Union Home in the thirty-six months preceding their resignations. (ECF No. 23, PageID # 487.)

Ballew's Agreement also contains a provision barring the solicitation of Union Home's employees:

> Limited Non-Solicitation of Employees. During the Restricted Period and for two (2) years thereafter, Employee will not, directly or indirectly, on behalf of themselves or a Competitive Entity, employ or seek to employ any person who is employed by the Company or otherwise induce such person to leave his/her employment with the Company.

(ECF No. 51-1, PageID # 1249.) Berryman, Elias Gonzales, Pedro Gonzalez, Luu, and Rosenberry's Agreements contain nonsolicit of employees provisions identical to Ballew's provision. (ECF No. 51-3, PageID # 1257.) Tabora and Webb's nonsolicit of employees provisions are identical to Ballew's provision, but their prohibition is for one year. (ECF No. 51-9, PageID # 1295; ECF No. 51-10, PageID # 1300.) Union Home has not previously sought injunctive relief as to this provision; however, evidence revealed for the first time at the Hearing demonstrated the actual or threatened breach of it. (ECF No. 49, PageID # 896-97, 912-15, 918-20, 975; *see also* ECF No. 50, PageID # 1159; ECF No. 51-13.)

## C. The template Agreement's provision on Confidential Information

Ballew's Agreement contains a provision protecting Union Home's Confidential Information:

> Confidential Information. Employee shall not (i) use any Confidential Information for any purpose other than on behalf of the Company, or (ii) directly or indirectly disclose, divulge, reveal, report, publish or transfer, for any purpose whatsoever, any Confidential Information to any third party. Employee agrees that all Confidential Information, however stored or memorialized, is the sole property of the Company and shall be immediately returned to the Company upon request or the termination of Employee's employment, whichever comes first, and no copies shall be retained by Employee. For purposes of this Agreement, "Confidential Information" shall include confidential or proprietary information or trade secrets of the Company, including, but not limited to, written or electronic information: (i) disclosed to Employee or known by Employee as a result of his or her employment, (ii) which is not generally known, and (iii) which relates to or concerns the Company's business, technology, information systems, computer programs, software, customers, prospective customers, referral sources, pipelines, customer relationship management databases, suppliers, vendors, sales, marketing or finances.

Confidential Information shall also include all information and matters specifically designated as proprietary and/or confidential by the Company's customers, referral sources, or other business partners.

(ECF No. 51-1, PageID # 1249-50.) Defendants' Agreements all have the same provision. (ECF No. 51-3, PageID # 1257; ECF No. 51-4, PageID # 1263; ECF No. 51-5, PageID # 1270; ECF No. 51-7, PageID # 1284; ECF No. 51-8, PageID # 1290; ECF No. 51-9, PageID # 1295-96; ECF No. 51-10, PageID # 1300.)

### D. Other miscellaneous provisions in the template Agreement

The Agreements' restrictive covenants protect Union Home's legitimate interests, including Union Home's trade secrets and confidential information, as well as its relationships with its customers, prospects, and referral sources, but they do not prevent Defendants from earning a livelihood, as all parties have agreed:

> <u>Legitimate Interests.</u> Due to the nature of the business of the Company, certain employees, including Employee, are provided access to confidential and/or trade secret information that is proprietary to the Company. Likewise, via their employment, certain employees, including Employee, are introduced to, given the opportunity to develop personal contacts with, and actually develop an advantageous familiarity with the Company's customers, prospective customers, and referral sources. If this confidential or "trade secret" information or these contacts and familiarity were made available to the Company's competitors or other individuals outside the Company, or otherwise used against the Company's interests, it would provide a competitor with an unfair competitive advantage and likely result in a loss of business or competitive position for the Company and/or harm the Company's goodwill and investment in developing and maintaining its business relationships. *The parties expressly agree that the terms of this Agreement are reasonable, enforceable, and necessary to protect the Company's interests and will not prevent Employee ability from earning a livelihood.*

(ECF No. 23, PageID # 470 (emphasis added).)

Because the Agreements' restrictive covenants protect the legitimate interests of Union Home, the Agreements expressly provide they will be automatically extended for one-year if they are violated and the parties have agreed the scope of the restriction should be enforced to the maximum extent permitted by law and, when necessary, judicially modified as set forth below:

> Extension if Violated; Enforcement as Written.  In the event Employee violates any covenant in this Agreement, the term of all covenants contained herein *shall automatically be extended for a period of one (1) year after the later of (a) the date on which Employee ceases such violation; or (b) the date of the entry of a court order enforcing such covenant.* Further the parties desire that the covenants contained herein be enforced to their full extent. However, in the event a court of competent jurisdiction determines such a covenant to be overly broad or otherwise unenforceable as written, the parties respectfully request that the restriction be enforced to the maximum extent permitted by law, *and Employee hereby consents and agrees that the scope of such covenant may be judicially modified.*

(ECF No. 23, PageID # 471 (emphasis added).)

The Agreements also expressly provide, and all parties agreed, that a violation of the restrictive covenants would cause irreparable harm and an injunction may be issued *via* the following provision:

> Remedies.  In the event Employee violates any covenant set forth herein, *Employee agrees that such violation will cause irreparable harm to Company and Employee consents to the issuance of a restraining order and/or an injunction.* Employee shall be liable for any attorneys' fees expenses expended by the Company to enforce this Agreement. No failure or delay on the part of the Company to exercise any right hereunder shall operate as a waiver thereof. All remedies hereunder are cumulative and are not exclusive of any other remedies.

(ECF No. 23, PageID # 471 (emphasis added).) Further, the Agreements explicitly provide that raising a counterclaim against Union Home will not constitute a defense to Union Home's enforcement of the restrictive covenants. (ECF No. 51-1, PageID #

1250; ECF No. 51-3, PageID # 1258; ECF No. 51-4, PageID # 1264; ECF No. 51-5, PageID # 1271; ECF No. 51-7, PageID # 1285; ECF No. 51-8, PageID # 1291; ECF No. 51-9, PageID # 1296; ECF No. 51-10, PageID # 1301.)

**E. Union Home's use of restrictive covenants in Defendants' Agreements**

One way Union Home protects its confidential information and business relationships is by entering into employee agreements—like Defendants' Agreements. (ECF No. 49, PageID # 838.) These agreements contain restrictive covenants in "four main areas"—a noncompete, a nonsolicitation of customers, a nonsolicitation of employees, and a confidentiality provision. (*Id.*)

As a financial institution, Union Home keeps certain information confidential. (ECF No. 49, PageID # 839.) And Union Home uses, among other things, policies, trainings, physical and electronic security, and employment agreements to protect such information. (*Id.*) For instance, Union Home's "Information and Cyber Security Policy" and its Employee Handbook have policies related to protecting confidential information. (*Id.*, PageID # 839, 841.) And employees—like Defendants—are aware of those policies. (*Id.*) Union Home also provides loan officers—like Defendants—with password protected computers, email accounts, and a loan origination software called Encompass. (*Id.*, PageID # 841-42.)

The above policies and agreements protect information pertaining to borrowers, prospective borrowers, referral sources, among other things. Union Home considers all these items to be confidential information. (ECF No. 49, PageID # 838.) In sum, Union Home takes substantial steps to protect its confidential information

and Defendants knew Union Home did so. (ECF No. 49, PageID # 886, 956, 992, 1013-14, 1037; ECF No. 50, PageID # 1067, 1112, 1130-31.)

Defendants, as employees, had unfettered access to Union Home's confidential information during their employment. (See generally ECF No. 49, PageID # 886, 956, 992, 1013-14, 1037; ECF No. 50, PageID # 1067, 1112, 1130-31.) Such information included, but was not limited to, current and prospective borrower information, sensitive sales and marketing information discussed at internal meetings, and Union Home's product training. (ECF No. 49, PageID # 842.) Defendants had access to and used Encompass—Union Home's loan origination software. (ECF No. 49, PageID # 894, 959, 955, 1017, 1040; ECF No. 50, PageID # 1068, 1126, 1149.) Defendants also had access to current and prospective borrowers' personal and financial information (e.g., banking information, credit scores, etc.). (*See* ECF No. 49, PageID # 842, 984; ECF No. 50, PageID # 1069.)

In addition to their comprehensive access to confidential information, Union Home's loan officers—like Defendants—are "the face of Union [Home], so they generate their business through referral partners, which would be real estate agents, builders, and then the relationships they would have with past clients." (ECF No. 49, PageID # 835 (alteration added).) Loan officers, like Defendants, are the primary contact between Union Home and their customers and/or referral sources. (*See generally* ECF Nos. 23, 30; see also ECF No. 49, PageID # 837.) Those relationships are vital to success in the mortgage industry. (ECF No. 49, PageID # 835.)

Defendants were the face of Union Home in their respective markets due to their direct and frequent contact with customers, prospects, and referral sources. When they abruptly resigned *en masse*, Union Home had to begin a rebuilding process to establish a new "face" in each market. (*See id.*, PageID # 853, 887, 956-57, 993, 1014, 1037; ECF No. 50, PageID # 1069, 1112, 1131.) This process takes some time, and place Union Home in a very vulnerable position—one that becomes wholly untenable when the departing loan officer is actively trading on the goodwill Union Home is seeking to retain. (*Id.*) The harm caused by a loan officer with strong relationships and knowledge of Union Home's confidential information immediately going to work for a competitor in the same market is irreparable. (ECF No. 49, PageID # 853.) To avoid this harm, Union Home relies upon covenants not to compete, such as to which those Defendants agreed. (ECF No. 49, PageID # 854-55.)

## F. Defendants and American Pacific's representative admitted Defendants are competing in violation of all the restrictive covenants in the Agreements

Defendants are trading on Union Home's goodwill and confidential information by competing in the same markets they served for the company. At the Hearing, Defendants—and Nugent—candidly admitted they are competing against Union Home. (ECF No. 49, PageID # 895, 899, 907, 960-61, 963, 971, 996, 998, 1018, 1020-21, 1023-24, 1041, 1044-45; ECF No. 50, PageID # 1079, 1084, 1117-19, 1136, 1138-39, 1162.) They are generating business from the same realtor referral sources and originating loans for American Pacific in the same city/counties they originated loans for Union Home. (ECF No. 49, PageID # 895, 899, 907, 960-61, 963, 971, 996, 998, 1018, 1020-21, 1023-24, 1041, 1044-45; ECF No. 50, PageID # 1079, 1084, 1117-19,

1136, 1138-39, 1162.) While these violations of the Agreements' noncompete provision are devastating, there is more.

Prior to the Hearing, Union Home served discovery on Defendants specifically requesting information related to the loans they originated and continue to originate for American Pacific. (*See generally* ECF No. 30, PageID # 609-10.) In response, Defendants provided Union Home with a list of loans closed by July 2025 and expected to be closed in the months thereafter. (Union Home's Hearing Exs. 63-64.)

This information revealed that as of July 2025, Defendants had closed approximately $44 million in loans for American Pacific and anticipated closing another $27 million in loans. (ECF No. 49, PageID # 850-51; *see also* Hearing Exs. 65-66.) Together, Defendants closed or anticipated closing approximately 231 loans for American Pacific as of July 2025. (PI Exs. 63-66; *see generally* ECF No. 49, PageID # 845-852.) Union Home fully expects those numbers have grown significantly since the Hearing.

Union Home compared last names from the lists of loan information American Pacific provided and found a substantial number of matches. (*See generally* ECF No. 49, PageID # 844-52; *see also* PI Exs. 65-66.) Defendants not only competed with Union Home in the prohibited areas, but they also brazenly solicited and accepted business from Union Home's customers and identified prospective customers. (*See generally* ECF No. 49, PageID # 899-909, 963-71, 998-1000, 1021-24, 1043-45; ECF No. 50, PageID # 1083-1086, 1118-19, 1140; *see also* PI Exs. 65-66.) For example, the following chart shows loans Defendants closed for American Pacific after leaving

Union Home:

| Loan Officer | Number of Loans Closed | Number of Closed Loans Suspected of Being UHM Prospective Customers | Number of Closed Loans Suspected of Being UHM Current Customers | Total Closed Loan Amount |
|---|---|---|---|---|
| Michael Ballew | 4 | 0 | 0 | 1,329,685 |
| Andy (Carl) Berryman | 10 | 0 | 3 | 1,125,802 |
| Elias Gonzales | 34 | 2 | 15 | 11,148,044 |
| Pedro Gonzalez | 41 | 2 | 12 | 12,723,108 |
| Nicholas Lichwick | 0 | 0 | 0 | 0 |
| Hong (Bobby) Luu | 18 | 0 | 13 | 8,221,134 |
| Blain Rosenberry | 19 | 0 | 8 | 4,111,696 |
| George Tabora | 0 | 0 | 0 | 0 |
| Robert (Bob) Webb | 22 | 7 | 8 | 5,485,372 |
| TOTAL | 148 | 11 | 59 | 44,144,841 |

(PI Ex. 65.)[1] An additional chart shows the loans Defendants anticipated closing for American Pacific within months of July 2025:

| Loan Officer | Number of Anticipated Loans | Number of Anticipated Loans Suspected of Being UHM Prospective Customers | Number of Anticipated Loans Suspected of Being UHM Current Customers | Total Anticipated Loan Amount |
|---|---|---|---|---|
| Michael Ballew | 11 | 0 | 4 | 3,348,849 |
| Andy (Carl) Berryman | 6 | 1 | 2 | 1,617,740 |
| Elias Gonzales | 26 | 0 | 10 | 9,110,080 |
| Pedro Gonzalez | 14 | 0 | 8 | 4,915,204 |
| Nicholas Lichwick | 1 | 0 | 0 | 676,637 |
| Hong (Bobby) Luu | 8 | 0 | 4 | 3,235,131 |
| Blain Rosenberry | 9 | 0 | 4 | 2,248,496 |
| George Tabora | 3 | 0 | 1 | 643,580 |
| Robert (Bob) Webb | 5 | 1 | 1 | 1,193,999 |
| TOTAL | 83 | 2 | 34 | 26,989,716 |

(PI Ex. 66.) Union Home suspects these numbers have grown since July 2025.

In sum, Defendants closed or anticipated closing approximately 231 loans. (PI Exs. 63-66; *see generally* ECF No. 49, PageID # 845-852.) The information produced by American Pacific suggests 106 of those loans are with Union Home's current or prospective customers. At the Hearing, Defendants admitted soliciting and/or accepting business from Union Home's current and prospective customers—some

---

[1] Union Home acknowledges Nicholas Lichwick is no longer a defendant in this case; but, in the interest of evidence preservation, has not removed his name from documents introduced at the hearing.

Page 12 of 38

doing so with confidential information taken from Union Home. (*See generally* ECF No. 49, PageID # 899-909, 963-71, 998-1000, 1021-24, 1043-45; ECF No. 50, PageID # 1083-1086, 1118-19, 1140; *see also* PI Exs. 63-71, 73-74, 77-79.)) Originating just one loan for a Union Home customer or prospective customer violates the Agreements' prohibition on soliciting customers. (*See generally* ECF Nos. 51-1, 51-3 through 10.) And originating even one loan in the prohibited area violates applicable noncompete provisions, regardless of whether the borrower is a Union Home customer or prospective customer. (*See generally* ECF Nos. 51-1, 51-3 through 10.) Each Defendant admitted working for American Pacific in the same geographic areas as they worked for Union Home. (ECF No. 49, PageID # 895, 899, 907, 960-61, 963, 971, 996, 998, 1018, 1020-21, 1023-24, 1041, 1044-45; ECF No. 50, PageID # 1079, 1084, 1117-19, 1136, 1138-39, 1162.)

The Defendants' testimony at the Hearing further undermined their position. Ballew skirted multiple questions during his testimony by indicating he could not confirm the identity of borrowers or the number of loans he originated, among other things. (*See generally* ECF No. 50, PageID # 1083-85.) Even though American Pacific provided Union Home with the loan information, (PI Ex. 63-64; *see also* ECF No. 49, PageID # 845-852; ECF No. 50, PageID # 1156-57), Ballew appeared to question the accuracy of that production (*see generally* ECF No. 50, PageID # 1083-85). Union Home also questions whether American Pacific's production of loan information was in any way complete as it omitted any loan relating to the "transition teams" Defendant's joined when they initially joined American Pacific. (*See generally* ECF

No. 49, PageID 907, 968-970, 997, 1019, 1022-23, 1042 (all discussing a transition team where loans were or may have been closed, yet none of them appear in American Pacific's production of closed or anticipated loans); ECF No. 50, PageID # 1082 (same).)

When Union Home questioned Nugent regarding the "transition teams" Defendants mentioned, he denied knowing or even understanding the term. (ECF No. 50, PageID # 1157.) When asked if the term was on American Pacific's website, Nugent testified it might be—and an internet search shows it is. (*See generally id.*)[2] American Pacific's website says a "transitions team" will "help [loan originators] onboard every step of the way so [they] can stick to what [they] do best: originating and closing loans. This includes helping [them] transfer [their] mortgage licenses *and pipeline.*" *See* fn. 1 (emphasis and alterations added).

The addition of the word "pipeline" to American Pacific's description of the "transitions team" is particularly telling as Tabora and Berryman stole Union Home's confidential information. (ECF No. 49, PageID # 974; ECF No. 50, PageID # 1140-42.) Tabora admitted taking information related to loan applications for the sole purpose of attempting to solicit those customers to apply for loans with American Pacific. (ECF No. 50, PageID # 1142-44.) Berryman testified he took Union Home's confidential information for "the purpose of making sure that if somebody did reach out to [him], that [he] knew that they were on that list so [he] could advise them correctly." (ECF No. 49, PageID # 974 (alterations added).) In Berryman's responses

---

[2] https://www.apmortgage.com/joinapm-blog/as-a-mortgage-loan-originator-who-you-work-for-matters.

to Union Home's Requests for Admission ("RFA"), he said he took the information to "ascertain who he should not call or originate loans for" and then said "he did not use this information in any way to originate loans" for American Pacific. (ECF No. 30-1, PageID # 637.) Likewise, Nugent testified that American Pacific "did not use that information in *any way* in [American Pacific's] business [and] did not close a loan for those customers." (ECF No. 50, PageID # 1172-73 (emphasis and alterations added).) But Berryman eventually contradicted his RFA response, his earlier testimony, and Nugent's testimony when he admitted closing a loan for at least one Union Home customer contained on the list. (ECF No. 49, PageID # 968-69, 970, 984; *see also* PI Exs. 63-66.) Berryman's admission demonstrates that all the prior testimony and discovery responses to the contrary were false.

Prior to leaving Union Home, Defendants apparently recognized moving to American Pacific in the same geographic areas would violate their Agreement, so they requested, and received, assurances from American Pacific that it would indemnify them in any potential dispute with Union Home. (*See generally* ECF No. 49, PageID # 914-16, 972-73; ECF No. 50, PageID # 1080, 1116-17, 1137.) Nugent provided Defendants with a letter or email detailing that "to the extent [Defendants] actions in separating from employment at Union Home ("UH") are consistent with our legal guidance, APM will defend and indemnify you and your staff against any and all legal claims arising out of your separation and/or your onboarding at APM." (ECF No. 51-13, PageID # 1313; ECF No. 50, PageID # 1154-56.) Defendants admitted receiving this promise of indemnification was a key factor in deciding to resign from their

employment with Union Home before their Agreements' noncompete provisions expired. (*See generally* ECF No. 49, PageID # 914-16, 972-73; ECF No. 50, PageID # 1080, 1116-17, 1137.)

The Hearing also provided evidence that Defendants solicited Union Home employees. (ECF No. 49, PageID # 896-97, 912-15, 918-20; *see also* ECF No. 51-13.) Nugent's letter provided a script for Defendants to use when communicating with Union Home employees. He then encouraged Defendants to solicit individuals who responded the scripted message and expressed interest in employment with American Pacific. (ECF No. 51-13, PageID # 1313; ECF No. 50, PageID # 1154-56.) Nugent's script provides:

> Dear: [insert name]
>
> I write to let you know that I am leaving Union Home to take a position at American Pacific Mortgage. I have enjoyed working with you and wish you well in the future. If you need to reach me, my new contact information is as follows: [insert information].

(*See* ECF No. 51-13.) Rosenberry admitted to soliciting Union Home employees Jessica Wetzel and Berryman. (ECF No. 49, PageID # 896-97, 912-15.) Rosenberry also—at the very least—attempted to solicit one other Union Home employee to resign from Union Home and work for American Pacific (ECF No. 49, PageID # 918-20). Berryman has a commission-based incentive from American Pacific to solicit Union Home employees. (*See generally* ECF No. 49, PageID # 975; ECF No. 50, PageID # 1159.)

Notably, Nugent's letter contradicts Defendants' response to Union Home's Motion for Preliminary Injunction where Kevin Caruana—American Pacific's Vice

President, Retail Production—signed a declaration under penalty of perjury stating, "Defendants were instructed by [Caruana] and others at APM to refuse to discuss employment opportunities with current UHM employees." *Compare* (ECF No. 27-1, PageID # 589, ¶ 8) *with* (ECF No. 50, PageID # 1154-55, 1158-60; ECF No. 51-13, PageID # 1313-14). When confronted with this contradiction, Nugent suggested Caruana's declaration refers to Defendants' ability to recruit *other* Union Home employees at *other* Union Home branches. (ECF No. 50, PageID # 1158-60.) Nugent's testimony is not credible as 1) it implies Defendants solicited one another to resign from Union Home and work for American Pacific (*see generally id.*), 2) Nugent's letter states they can recruit their former colleagues (ECF No. 51-13), and 3) Rosenberry admitted soliciting Union Home employee Jessica Wetzel, Berryman, and—at the very least—attempted to solicit another Union Home employee to resign from Union Home and work for American Pacific (ECF No. 49, PageID # 896-97, 912-15, 918-20).

Nugent also offered his legal opinion on the enforceability of Defendants' Agreements and apparently instructed Defendants to disregard the covenant not to compete based upon his opinion without 1) being licensed in Ohio, 2) reviewing Ohio case law, or 3) reviewing cases interpreting Union Home's employee agreements. (ECF No. 50, PageID # 1153, 1176.) Bottom line—American Pacific is willing to indemnify Defendants in exchange for the millions of dollars in loans they have closed and will continue to close until this Court rules on the pending motion for a preliminary injunction. (*See generally* PI Exs. 63-64.)

## III.    ARGUMENT

Union Home need not prove its entire case to secure the injunction it seeks. Instead, Union Home must demonstrate the balance of the following factors weigh in favor of issuing an injunction: (1) whether Union Home has a strong likelihood of success on the merits; (2) whether Union Home would suffer irreparable injury without the injunction; (3) whether the issuance of a preliminary injunction would substantially harm third parties; and (4) whether issuance of a preliminary injunction would serve the public interest. *PolyOne Corp. v. Kutka*, 67 F. Supp. 3d 863, 869 (N.D. Ohio 2014). The testimony and evidence introduced at the Hearing show each of these factors favors injunctive relief. Defendants' deliberate, ongoing breaches of their Agreements will continue to irreparably harm Union Home absent a preliminary injunction. A preliminary injunction is necessary to prevent Defendants from breaching their Agreements any further.

### A. Union Home has a strong likelihood of success on the merits

To establish a likelihood of success on the merits of its claims, Union Home need only raise "questions going to the merits so serious, substantial, difficult, and doubtful as to make a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (alterations added). Union Home has done so.

Under Ohio law, the elements of a breach of contract claim are existence of a contract, performance by plaintiff, breach by the defendant, and damage or loss to the plaintiff because of the breach. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012); *see also Lucarell v. Nationwide Mut. Ins.*, 2018-Ohio-15, ¶ 41

(Ohio 2018). It is undisputed the parties executed the Agreements and Union Home employed the Defendants. The only disputes are whether the Agreements are reasonable and enforceable and whether Defendants breached the Agreements.

The evidence at the Hearing answers both questions in the affirmative. To be enforceable, the restrictive covenants in Defendants' Agreements must be reasonably necessary to protect Union Home's legitimate interests. (*Id.*; *see generally* ECF No. 23, PageID # 470 (illustrating the Agreements' "Legitimate Interests" provision).) Union Home has a "legitimate interest in limiting … a former employee's ability to take advantage of personal relationships … developed while representing" Union Home and in "preventing a former employee from using" its "customer lists or contacts to solicit new customers." *UZ Engineered Prods. Co. v. Midwest Motor Supply Co.*, 2001-Ohio-8779, ¶ 39 (10th Dist.).

As for breach, Defendants admitted competing with Union Home. (ECF No. 49, PageID # 845893-94, 958-59, 994-95, 1017-18, 1039-40; ECF No. 50, PageID # 1077-78, 1114-15, 1133-34,1162.) Defendants' testimony and the evidence introduced at the hearing—including Nugent's testimony on behalf of American Pacific—demonstrated Defendants breached the non-compete provision of the Agreements as well as those provisions that prevent Defendants from doing business with Union Home's customers or identified prospects. Union Home has a strong likelihood of success on the merits of its breach-of-contract claims against Defendants and has satisfied its burden of raising a fair question as to its rights in need of protection.

1.  **Defendants' Agreements with Union Home are enforceable.**

    i.   **The *Raimonde* Factors weigh heavily in favor of enforcement.**

When an Ohio court is asked to enforce a restrictive covenant, it turns to *Raimonde v. Van Vlerah*, 325 N.E.2d 544 (1975) and the factors announced therein (the "*Raimonde* Factors"). (*See generally* ECF No. 23, PageID # 478-79.) Those factors are:

1.  Whether the restriction is temporally and spatially limited;

2.  Whether the employee represents the sole contact with the customer;

3.  Whether the employee is possessed with confidential information or trade secrets;

4.  Whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;

5.  Whether the covenant seeks to stifle the inherent skill and experience of the employee;

6.  Whether the benefit to the employer is disproportional to the detriment to the employee;

7.  Whether the covenant operates as a bar to the employee's sole means of support;

8.  Whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and

9.  Whether the forbidden employment is merely incidental to the main employment.

*Fratelli*, 2025 WL 639315, at *10 (citing *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 526 (6th Cir. 2013)).

The "factors are not prerequisites" but must be "balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Nor are the factors "rigid and unbending requirements," and there is no "fixed legal standard" on whether to issue an injunction. *In re Eagle-Picher Indus.*, Inc., 963 F.2d 855, 859 (6th Cir. 1992). Here, each *Raimonde* Factor favors enforcement.

### a. The restrictive covenants in the Agreements are temporally and spatially limited (*Raimonde Factor* #1)

The noncompete provisions in the Defendants' Agreement have both temporal and spatial limitations which vary slightly among the Agreements. (ECF No. 23, PageID # 467-70; ECF No. 30, PageID # 613-14.) And, for uniformity and ease of application, Union Home has already provided a narrowed geographic scope for all the noncompete provisions of the Agreements—the city/counties in which Defendants originated loans on behalf of Union Home. (ECF No. 23, PageID # 480, 487; *see also* ECF No. 30, PageID # 613, 618.) The Agreements themselves provide that a court may modify them if necessary, and the Northern District of Ohio has done so in the past. (ECF No. 51-1, PageID # 1250; ECF No. 51-3, PageID # 1257; ECF No. 51-4, PageID # 1264; ECF No. 51-5, PageID # 1271; ECF No. 51-7, PageID # 1284; ECF No. 51-8, PageID # 1290; ECF No. 51-9, PageID # 1296; ECF No. 51-10, PageID # 1301); *see also Union Home Mortgage Corp. v. Fratelli*, No. 1:23-cv-857, 2025 WL 639315, at *11 (Feb. 27, 2025) (noting courts can amend agreements to achieve enforcement to the extent necessary to protect the employer's legitimate interests). This geographic

limitation is reasonable as it is narrowly focused on the area in which Union Home has a legitimate interest in restricting Defendants' actions given the prior scope of their work for Union Home.

The Agreements also contain various expiration dates for the noncompete provisions—none of which exceeded two years from the date each Defendant resigned. (ECF No. 30, PageID # 613-14.) Practically, these dates are irrelevant because none of these provisions expired prior to the filing of this lawsuit, and the Norther District of Ohio has previously held Ohio law prevents the expiration of a noncompete agreement while litigation is ongoing. (*Id.* PageID # 614, fn. 3 (quoting *MP TotalCare Servs. v. Mattimoe*, 648 F. Supp. 2d 956, 964, n.6 (N.D. Ohio 2009).) Further, the Agreements themselves provide for the extension of their provisions for one year after the later of (1) the date the employee stops violating the agreement, or (2) the date the Court enters an order enforcing the agreement. (ECF No. 23, PageID # 471); *see supra* Section II, Part D. Since Ohio federal and state courts routinely enforce noncompete agreements for up to two years, the period at issue here is clearly reasonable. (ECF No. 23, PageID # 477 (citing a string of cases).)

Defendants' Agreements also prohibit solicitation of Union Home's current and prospective customers for either one or two years. (*See generally* ECF Nos. 51-1, 51-3 through 10.) As noted in prior briefing, Union Home has already proposed a narrowed enforcement of the nonsolicitation provisions of the Agreements to one year. (ECF No. 23, PageID # 480, 487; *see also* ECF No. 30, PageID # 613, 618) And a one-year ban is "well within the range of time periods that Ohio courts have found reasonable."

*Cretor Construction Equipment LLC v. Gibson*, 738 F. Supp. 3d 950, 961 (S.D. Ohio July 1, 2024). And no geographic limitation is necessary for nonsolicitation of customer's provision in the Agreements as "Ohio law permits customer-based restrictions in lieu of geographic restrictions." *Fratelli*, 2025 WL 639315, at *13 (citing *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 734 (S.D. Ohio June 30, 2006)).

The Agreements further prohibit Defendants' from soliciting Union Home's employees for one year. Under *Fratelli*, this is reasonable. *Fratelli*, 2025 WL 639315, at *16 (holding Fratelli's 2-year restriction was enforceable). As a result, Union Home has satisfied the first *Raimonde* factor for all the restrictive covenants at issue.

### b. Defendants were the sole contact with the customers at issue (*Raimonde Factor* #2)

The testimony and evidence at the Hearing demonstrated Defendants were the primary contact between Union Home and their customers and/or referral sources. (*See generally* ECF Nos. 23, 30; see also ECF No. 49, PageID # 837.) There was no evidence of any other person serving as the primary contact. Therefore, this *Raimonde* factor also weighs in favor of the enforcement of the restrictive covenants.

### c. Defendants possessed Union Home's confidential customer information (*Raimonde Factor* #3)

Defendants had unfettered access to Union Home's confidential information during their employment. (*See generally* ECF No. 49, PageID # 886, 956, 992, 1013-14, 1037; ECF No. 50, PageID # 1067, 1112, 1130-31.) While "confidential information does not have to rise to the level of a trade secret" to be "subject to a valid non-

disclosure agreement between" an employer and an employee, it does in this case. *Eng'g Excellence, Inc. v. Meola*, 2002-Ohio-5412, ¶ 33 (10th Dist.) As discussed above such information would include but in no way be limited to information related to current and prospective borrowers, sensitive sales and marketing information, and training related to products offered by Union Home. (*See* ECF No. 49, PageID # 841-42, 984; ECF No. 50, PageID # 1069.) Since Union Home has a legitimate interest in protecting this confidential information, this factor supports the enforcement of the restrictive covenants.

### d. *Raimonde Factors* #4 through #9 all favor enforcement of Defendants' Agreements

Without the protection of the restrictive covenants in the Agreements, Union Home's competitors could raid its loans officers and trade upon the confidential information they possess and the relationships they have cultivated to unfairly compete with Union Home. *See supra* Section II, Parts E, F. American Pacific and Defendants have done precisely that here. (*See generally* ECF Nos. 1, 51.) Union Home is only seeking to prevent competition in the city/counties in which Defendants served on behalf of Union Home. (ECF No. 23, PageID # 480; *see also* ECF No. 30, PageID # 613.)

Bryan Wright—Union Home's Vice President of Retail Sales, East Division—testified that loan officers are the primary contact for referral sources and current and prospective borrowers. (ECF No. 49, PageID # 837.) He further testified each Defendant secured new referral sources and maintained referral sources over 2022 to 2024—a challenging time in the mortgage industry. (ECF No. 49, PageID # 835-36.)

This fact proves each Defendant maintained and developed referral sources while working for Union Home. (*See generally id.*) Berryman, Elias Gonzales, Pedro Gonzales, Luu, and Rosenberry corroborated Wright's testimony by admitting they secured new referral sources and maintained existing ones while employed at Union Home. (*Id.*, PageID # 887, 956-57, 993, 1014, 1037.)

And Defendants are using their referral sources to compete with Union Home by originating loans for new customers, and current and prospective customers of Union Home. (*See generally* ECF No. 49, PageID # 895, 899, 907, 960-61, 963, 971, 996, 998, 1018, 1020-21, 1023-24, 1041, 1044-45; ECF No. 50, PageID # 1079, 1084, 1117-19, 1136, 1138-39, 1162; *see also* PI Exs. 63-66.) Enjoining Defendants from competing in the city/counties in which they did business for Union Home or soliciting Union Home's current and prospective customers through their relationships with realtor referral sources would not unreasonably restrain Defendants' ability to use their skills as loan officers. As Defendants testified, they have ample experience originating loans, so they are no doubt able to obtain new customers and referral sources in city/counties not covered by the requested injunction. (*See generally* ECF No. 27, PageID # 578-79.) And a prohibition against originating loans within the city/counties Defendants served on behalf of Union Home is directly related to their employment with Union Home. (ECF No. 23, PageID # 480; *see also* ECF No. 23-1, PageID # 490-495.) Thus, the benefit to Union Home outweighs the detriment to the Defendants.

### ii. The Federal Trade Commission's Non-Compete Clause Rule does not affect the enforceability of the Agreements

At the conclusion of the Hearing, the Court requested that the parties address the potential effect the Federal Trade Commission's Non-Compete Clause Rule might have on the matter. Fortunately, this does not require extensive analysis because after the close of the hearing, the FTC dismissed its appeals of the District Court decisions vacating the rule—*Ryan, LLC v. FTC*, No. 24-10951 (5th Cir.), and *Properties of the Villages v. FTC*, No. 24-13102 (11th Cir.)—and acceded to the vacatur of the Non-Compete Clause Rule.[3] Since the FTC has effectively acceded to the vacatur of the Non-Compete Clause Rule, it should have no effect on the enforcement of the Agreements.

### 2. The Hearing provided an abundance of evidence Defendants breached their Agreements

To prove a breach-of-contract claim under Ohio law, Union Home must prove the existence of a contract, performance by plaintiff, breach by the defendant, and damage or loss to the plaintiff because of the breach. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012); *see also Lucarell v. Nationwide Mut. Ins.*, 2018-Ohio-15, ¶ 41 (Ohio 2018).

Defendants have closed million in loans for American Pacific and anticipated closing millions more. *See supra* Section II, Part F. Each Defendant admitted working for American Pacific in the same geographic areas as they worked for Union Home.

---

[3] https://www.ftc.gov/news-events/news/press-releases/2025/09/federal-trade-commission-files-accede-vacatur-non-compete-clause-rule.

(ECF No. 49, PageID # 895, 899, 907, 960-61, 963, 971, 996, 998, 1018, 1020-21, 1023-24, 1041, 1044-45; ECF No. 50, PageID # 1079, 1084, 1117-19, 1136, 1138-39, 1162.) Nearly half of those loans appear to be with Union Home's current or prospective customers. Originating just one loan for a Union Home customer or prospective customer violates the Agreements' prohibition on soliciting customers. (*See generally* ECF Nos. 51-1, 51-3 through 10.) And originating even one loan in the prohibited area violates applicable noncompete provisions, regardless of whether the borrower is a Union Home customer or prospective customer. (*See generally* ECF Nos. 51-1, 51-3 through 10.)

Defendants' interest in obtaining assurances of indemnification from American Pacific prior to leaving Union Home reveals their recognition that moving to American Pacific but continuing to perform the same work in the same geographic area would violate their Agreements. Instead, they relied on Nugent's legal opinion that the Agreements were not enforceable under Ohio law, even though Nugent is not licensed in Ohio nor did he research any of the applicable cases. Defendant brazenly proceeded as if the Agreements did not exist. But Agreements are enforceable and Union Home is entitled to have the Court hold the Defendants to the Agreements.

## B. Union Home will suffer irreparable harm if injunctive relief is not granted

The Sixth Circuit recognizes that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute" and that "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer."

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) (affirming preliminary injunction as to both non-competition and non-solicitation provisions). In non-competition cases, irreparable harm exists where the ex-employee's "relationships with past customers make it likely they would return to her if they needed another loan or to refinance an existing loan, and that they would refer friends and family to her." *Union Home Mortgage Corp. v. Payne*, 2020 WL 4282309, at *10 (N.D. Ohio March 9, 2020); *Office Depot, Inc. v. Impact Office Products, LLC*, 2011 WL 4833117, at *14 (N.D. Ohio Oct. 12, 2011) ("[i]n the context of non-competes, courts have consistently held" loss of goodwill is irreparable). Irreparable harm is caused when Defendants "continue[] to erode [Union Home's] goodwill that it paid defendant to establish…" and when ex-employees retain confidential information. *Payne*, 2020 WL 4282309, at *10 (alterations added).

As stated above, Defendants were the face of Union Home in their respective markets due to their direct and frequent contact with customers, prospects, and referral sources. Without an injunction, Defendants will continue to exploit the confidential information and business relationships they acquired during their employment with Union Home. *See Kelly Services, Inc. v. Noretto*, 495 F. Supp. 2d 645, 659 (E.D. Mich. July 9, 2007) ("Kelly argues that it will suffer irreparable harm if a preliminary injunction is not granted because Noretto will continue to use Kelly's confidential information and trade secrets in violation of his contractual responsibilities to Kelly. The Court agrees."). And Defendants are soliciting and/or accepting business from Union Home's customers. *See Total Quality Logistics, LLC*

*v. EDA Logistics LLC*, 685 F. Supp. 3d 563, 579 (S.D. Ohio July 31, 2023) ("The loss of customer goodwill is an irreparable injury (element one) and one that often gives rise to hard-to-determine damages (element two)."). And actual harm has been caused because Defendants have solicited Union Home customers to form a business relationship with American Pacific. And Defendants have solicited one another and other Union Home employees to leave the company and work for American Pacific. Based on the above, Union Home has and will continue to suffer irreparable harm absent an injunction. (*See* ECF No. 49, PageID # 789-91, 853.)

### C. An injunction will not harm third parties.

The public interest lies in enforcing reasonable contracts. *See Mike McGarry & Sons, Inc. v. Gross*, 2006-Ohio-1759, ¶ 24 (8th Dist.) ("Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest."). And given the abundance of alternative loan officers—including other American Pacific loan officers—enforcing the injunction against Defendants will not adversely impact business competition or otherwise harm public interest. (*See* ECF No. 49, PageID # 855); *see also UZ Engineered Prod. Co.*, 2001-Ohio-8779, ¶ 42, 147 Ohio App. 3d 382, 397, 770 N.E.2d 1068, 1081 ("Because the . . .industry is highly competitive, with at least ten national companies in addition to various local and chain competitors, enforcement of plaintiff's noncompete clauses likely would not adversely affect business competition in the . . . industry or harm the public."). Defendants offered no evidence at the Hearing suggesting customers would be unable to secure a mortgage or be adversely impacted in any appreciable way if the Court

entered the requested injunction. Wright, in fact, testified to that the opposite is true—there is no shortage of loan officers. (ECF No. 49, PageID 855.)

### D. Any bond should be *de minimis*.

Upon the issuance of a preliminary injunction, Federal Rule of Civil Procedure 65(c) requires "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In this case, the narrow injunction sought by Union Home would permit Defendants to continue working in the same role and in the same industry just outside a handful of city/counties and American Pacific has already indemnified Defendants from any harm.  (*See generally* ECF No. 23; *see also* ECF No. 49, PageID # 914-16, 972-73; ECF No. 50, PageID # 1080, 1116-17, 1137, 1154-56; *see also* ECF No. 51-13, PageID # 1313-14.) Thus, if the injunction was erroneously entered, the harm to Defendants would be minimal making a *de minimus* bond appropriate. *See Bosley v. WildWetT.com*, 310 F. Supp. 2d 914, 936 (N.D. Ohio 2004) ("Given the lack of evidence that Defendants will suffer damages should the Court issue a preliminary injunction in error, this Court sets a low bond of one hundred dollars"). This is particularly true as there is "no evidence to indicate that [Union Home] . . . is not a financially sound corporation, or that it lacks adequate financial resources" when considering setting a bond. *Turbo Tek Enterprises, Inc. v. F.P. Feature Products, Inc.*, 1987 WL 19558 (N.D. Ill. Oct. 7, 1987).

**E. Defendants' newly revealed counterclaims are without merit and do not invalidate the Agreement or "explain away" Defendants' violations of the Agreements**

Since Defendants cannot deny breaching the Agreements they signed and wholly reneging on their promises, they resort to misdirection. Specifically, to differing degrees, each Defendant testified regarding their own grievances against Union Home. (ECF No. 49, PageID # 930-32, 979-80, 1003-05, 1025-28, 1048-50; ECF No. 50, PageID # 1091-93, 1099-1100, 1122-1123, 1146-48.) They then sought to parlay these gripes into a basis for jettisoning their Agreements or justifying their overt breaches of them. (*See generally* ECF No. 49, PageID # 930-32, 979-80, 1003-05, 1025-28, 1048-50; *see also* ECF No. 50, PageID # 1091-93, 1099-1100, 1122-1123, 1146-48.) Legally, this fails for several independent reasons as discussed below. Practically, an employee who voluntarily resigns to pursue greener pastures is not automatically relieved of all contractual obligations to a former employer simply by baldly asserting after-the-fact dissatisfaction.

Defendants Rosenberry, Elias Gonzales, and Pedro Gonzales complain that they are owed money by Union Home based upon a "profit and loss model." (ECF No. 49, PageID # 930-939, 1026-27, 1030-31; *see also* ECF No. 57, PageID # 1441-44; ECF No. 58, PageID # 1482-85; ECF No. 1522-26.) Defendant Ballew complains that he is owed money by Union Home for "marketing support." (ECF No. 56, PageID # 1398-1402.) These arguments have several flaws. Defendants conspicuously provided no evidence of any written agreement entitling them to be paid on a profit and loss model or marketing support, let alone what amount Union Home allegedly owes them and why. (ECF No. 49, PageID # 951, 1031-32, 1048-50; *see generally* ECF No. 56, PageID

# 1398-1402 (not attaching any agreement related to counterclaims); ECF No. 57, PageID # 1441-44 (same); ECF No. 58, PageID # 1482-85 (same); ECF No. 1522-26 (same).) Conversely, the Agreements do not promise any form of payment beyond commissions. (*See generally* ECF Nos. 51-1, 51-3 through 10.)

Further, the Agreements explicitly state they can only be modified in writing. (*See generally* ECF Nos. 51-1, 51-3 through 10.) Since there is no evidence of a written agreement requiring other payments, Defendants cannot establish any contractual right to these payments. Further, even if Defendants could somehow show Union Home breached their Agreements, the Agreements specifically provide such a breach "shall not constitute a defense to the enforcement by [Union Home] of the covenants in the [Agreements]." (*See, e.g.,* Pl. Hearing Ex. 42 at ¶ 12.) As a result, these counterclaims are both factually incorrect and legally irrelevant to the Union Home's request for a preliminary injunction.

Defendants Ballew, Berryman, Luu, Rosenberry, and Tabora have filed a counterclaim alleging "wrongful constructive discharge in violation of public policy." (*See generally* ECF No. 55, PageID # 1359-60; ECF No. 56, PageID # 1402-03; ECF No. 59, 1527-28; ECF No. 60, PageID # 1566-68; ECF No. 61, PageID # 1607-08.) At the Hearing, these Defendants claimed Union Home "illegally" required them to refer loans to another loan officer the consumer direct area (*see generally* ECF No. 49, PageID # 944-45, 987, 1006-07; ECF No. 50, PageID # 1097-98, 1103), that customers were unfairly scrutinized because they were Vietnamese (*see generally* ECF No. 49, PageID # 1004-05), or that they could not offer certain products (*see generally* ECF

No. 49, PageID 944-45, 987, 1006-7, 1051-52; ECF No. 50, PageID # 1091-93, 1146-47). (*See also* ECF No. 27, PageID # 571, 580; ECF No. 55, PageID # 1359-60; ECF No. 56, PageID # 1402-03; ECF No. 59, 1527-28; ECF No. 60, PageID # 1566-68; ECF No. 61, PageID # 1607-08.).) Yet the undisputed evidence provides that Union Home did not require any loan officer to make a referral to consumer direct. (*See generally* ECF No. 49, PageID # 880, 948; ECF No. 50, PageID # 1108.).) On the contrary, a few Defendants testified that very rarely they voluntarily referred loans to consumer direct (and received a referral fee), rather than simply turning the business away. (*See* ECF No. 49, PageID # 947-48, 987-88; *see also* ECF No. 50, PageID # 1108.) Luu fails to acknowledge there was a serious fraud incident involving a Vietnamese loan officer and Vietnamese customers in his area, which resulted in the loan officer leaving Union Home. (ECF No. 49, PageID # 1003.) And these Defendants all admitted that there was nothing in writing requiring Union Home to offer certain products. (ECF No. 49, PageID # 951, 985, 1010; ECF No. 50, PageID # 1108, 1150-51.)

Even if Defendant had facts supporting this counterclaim, they cannot establish the legal elements for wrongful discharge in violation of public policy. *See Swink v. Greater Cleveland Regional Transit Auth.*, 2009-Ohio-6105, ¶ 19 (8th Dist.); *see also Hollar v. RJ Coffey Cup, LLC*, 505 F. Supp. 2d 439, 454 (N.D. Ohio July 20, 2007). For example, the courts only allow claims for wrongful discharge in violation of public policy when such a claim is the only way to enforce the public policy at issue. *See generally Swift*, 2009-Ohio-6105, ¶¶ 19-20, 22. Here, there are several statutory

remedies in place to protect society's interests in the public policies Defendants' reference (*e.g.*, consumer and/or whistleblower complaints). As a result, it is impermissible to allow a claim for wrongful discharge in violation of the public policies cited in the counterclaim and Union Home anticipates filing a motion to dismiss the counterclaim or for a judgment on the pleadings in the near term. *Swift*, 2009-Ohio-6105, ¶ 22.

## F. The Terms of the Requested Preliminary Injunction

The purpose of a preliminary injunction is "to preserve the status quo of parties to a dispute until a final determination of an action can be had after a full hearing." *Fall v. Copperweld Specialty Steel Co.*, 380 F. Supp. 1277, 1278 (N.D. Ohio, 1974). In this case, a preliminary injunction should be issued on the following terms:

- Enjoin Defendant Michael Ballew for one year from the date the Court enters its order granting the preliminary injunction from, in any of the following Virginia city/counties: Albemarle, Augusta, Buena Vista City, Court of Rocking, Fluvanna, Franklin, Harrisonburg City, Highland, Roanoke, Roanoke City, Rockbridge, Rockingham, Shenandoah, Staunton City, and Waynesboro City; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the cities and/or city/counties in which he served for Union Home.

  Enjoin Defendant Andy (Carl) Berryman for one year from the date the Court enters its order granting the preliminary injunction from, in any of the following Pennsylvania city/counties: Adams, Cambria, Cumberland, Dauphin, Franklin, Lackawanna, Lancaster, Monroe, and York; in the following Maryland city/counties: Baltimore, Carrol, Cecil, and Washington; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties or Cities in which he served for Union Home.

  Enjoin Defendant Elias Gonzales for one year from the date the Court enters its order granting the preliminary injunction from, in Washington D.C.; in any of the following Maryland cities and/or city/counties: Ann Arundel, Baltimore, Baltimore

City, Carroll, Charles, Frederick, Hartford, Howard, Montgomery, Prince Georges, St. Mary's, and Washington; in the following Virginia city/counties: Arlington, Caroline, Culpeper, Fairfax, Fauquier, Frederick, Loudon, Lynchburg City, Manassas City, Manassas Park City, Orange, Prince William, Roanoke City, Shenandoah, Spotsylvania, Stafford, Warren, and Winchester City; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties or Cities in which he served for Union Home.

Enjoin Defendant Pedro Gonzalez for one year from the date the Court enters its order granting the preliminary injunction from, in Washington D.C.; in any of the following Maryland city/counties: Allegany, Anne Arundel, Baltimore, Baltimore City, Calvert, Caroline, Carroll, Charles, Frederick, Harford, Howard, Montgomery, Prince Georges, and Washington; in the following Virginia city/counties: Fairfax, Fauquier, Loudoun, Prince William, Spotsylvania, and Stafford; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties or Cities in which he served for Union Home.

Enjoin Defendant Hong (Bobby) Luu for one year from the date the Court enters its order granting the preliminary injunction in Washington D.C.; in the following Florida city/counties: Broward, Charlotte, Collier, Osceola, and Palm Beach; in the following Maryland city/counties: Anne Arundel, Baltimore, Charles, Frederick, Howard, Montgomery, Prince Georges, and Washington; in the following city/counties in Nebraska: Douglas and Lancaster County; in the following  New Jersey city/counties: Atlantic, Burlington, Camden, Monmouth, Ocean; in the following Pennsylvania city/counties: Berks, Cumberland, Dauphin, Delaware, Monroe, Montgomery, Philadelphia, and York; in the following Texas city/counties: Bexar, Dallas, Fort Bend, Harris, Nueces, Travis, Williamson; in the following Virginia city/counties: Arlington, Chesterfield, City of Colonial, Fairfax, Fauquier, Loudoun, Manassas City, Newport News City, Prince William, Spotsylvania, Stafford, and Suffolk City; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties in which he served for Union Home.

Enjoin Defendant Blain Rosenberry for one year from the date the Court enters its order granting the preliminary injunction in the following city/counties in Pennsylvania: Adams, Allegany, Bedford, Chester, Cumberland, Dauphin, Franklin, Fulton, Huntington, Jefferson, Juniata, Lancaster, Monroe, Northumberland, Perry, Pike, and York; in the following Maryland city/counties: Ann Arundel and Washington County; directly or indirectly: (1) serving as a

branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties in which he served for Union Home.

Enjoin Defendant George Tabora for one year from the date the Court enters its order granting the preliminary injunction in the following Maryland city/counties: Ann Arundel and Washington County; in the following Florida city/counties: Miami-Dade County; in the following County in Pennsylvania: Fairfax; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties in which he served for Union Home.

Enjoin Defendant Robert Webb for one year from the date the Court enters its order granting the preliminary injunction in the following North Carolina city/counties: Burke, Catawba, Cleveland, Forsyth, Gaston, Lincoln, Mecklenburg, and Rutherford; in the following South Carolina city/counties: Cherokee, Horry, and York; directly or indirectly: (1) serving as a branch manager, loan officer, or in any similar role which originates or facilitates the origination of mortgage loans, or (2) being compensated in any way for the origination of mortgage loans in the city/counties in which he served for Union Home.

For the avoidance of doubt, the order should clearly enjoin Defendants from soliciting or accepting referrals from referral sources (e.g., realtors) related to properties in the identified city/counties as well as, directly or indirectly, taking action to solicit or accept that business on behalf of a competitor of Union Home, such as American Pacific.

- Enjoining Defendants from soliciting or accepting business from Union Home's customers, prospective customers, and referral sources with whom each Defendant previously had contact or about whom they obtained confidential information for one year from the date this Court enters its order granting the preliminary injunction.

- Enjoining Defendants from using and/or disclosing Union Home's confidential and/or trade secret information, including but not limited to, the information regarding referral sources, customers and identified prospective customers.

- Enjoining Defendants from, directly or indirectly, soliciting Union Home employees on behalf of a competitor of Union Home for one year from the date this Court enters its order granting the preliminary injunction.

- Pursuant to Fed. R. Civ. P. 65(d)(2)(c), enjoining American Pacific and any subsequent employer of Defendants Ballew, Berryman, Luu, Elias Gonzales, Pedro Gonzalez, Rosenberry, Tabora, and Webb who competes with Union Home

from acting in "active concert or participation" with Defendants to violate the foregoing.

## IV.     CONCLUSION

Defendants have intentionally breached their legal and contractual obligations to Union Home. Their testimony at the Hearing makes clear they have no intention of stopping. Defendants' actions are causing irreparable harm to Union Home, and injunctive relief is warranted.


Dated: <u>October 31, 2025</u>.                    Respectfully submitted,

**BARNES & THORNBURG LLP**

<u>/s/ Jason T. Clagg</u>
Jason T. Clagg, Ohio Atty. No. 97303
Mark D. Scudder, *pro hac vice*
Cody D. Woods, Ohio Atty. No. 103642
888 S. Harrison St., Suite 600
Fort Wayne, Indiana 46802
Phone: 260-423-9440
Fax: 260-424-8316
jason.clagg@btlaw.com
mark.scudder@btlaw.com
cwoods@btlaw.com

*Attorneys for Plaintiff*
*Union Home Mortgage Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2025, a copy of the above was electronically filed with the Court and was served via the CM/ECF system to the following counsel of record for Defendants:

Michael P. O'Donnell
Andrew J. Cleves
Lauri P. Hartmann
FRANTZ WARD LLP
modonnell@frantzward.com
acleves@frantzward.com
lhartmann@frantzward.com

*/s/ Jason T. Clagg*
Jason T. Clagg