**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNION HOME MORTGAGE CORP., | ) | Case No. 1:25-cv-00318 |
| | ) | |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) | |
| | ) | Magistrate Judge |
| v. | ) | Jennifer Dowdell Armstrong |
| | ) | |
| MICHAEL BALLEW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Union Home Mortgage filed suit against nine former employees, claiming breach of contract and seeking to enforce the non-competition provision contained in each Defendant's employment agreement. In response, seven Defendants asserted counterclaims against Plaintiff. Plaintiff moves for judgment on the pleadings on each. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## STATEMENT OF FACTS

Defendants Michael Ballew, Andy (Carl) Berryman, Elias Gonzales, Pedro Gonzalez, Hong (Bobby) Luu, Blain Rosenberry, George Tabora, Robert Webb, and Craig Franczak are loan officers who previously worked for Plaintiff Union Home Mortgage and whose employment contracts included non-competition provisions. (ECF No. 51, ¶¶ 29–199, PageID #1197–1225.) Between December 2024 and February 2025, all nine Defendants resigned their positions at Union Home Mortgage

and went to work for a competitor, American Pacific Mortgage.  (ECF No. 51, ¶¶ 27–28, 31–33 & 38, PageID #1197–98.)  Union Home Mortgage alleges that Defendants conspired to resign as a group and to join a competitor "despite the contractual prohibitions on doing so."  (ECF No. 51, ¶ 267, PageID #1234.)

In response to Union Home Mortgage's first amended complaint, seven of the nine defendants—Michael Ballew, Andy (Carl) Berryman, Elias Gonzales, Pedro Gonzalez, Hong (Bobby) Luu, Blain Rosenberry, and George Tabora—raised counterclaims concerning Union Home Mortgage's conduct during the period of their employment.  (ECF No. 55; ECF No. 56; ECF No. 57; ECF No. 58; ECF No. 59; ECF No. 60; ECF No. 61.)  Only Defendants Robert Webb, and Craig Franczak did not bring counterclaims.

Despite differences in these Defendants' individual roles and experiences, their counterclaims present a common set of allegations.  Broadly, they allege that Union Home Mortgage reneged on contractual promises of additional compensation and that Union Home Mortgage engaged in unlawful business practices that harmed Defendants and effectively forced their resignations.  (ECF No. 85, PageID #2054–56.)

On Plaintiff's motion for judgment on the pleadings, Defendants' counterclaims allege the following facts, which the Court accepts as true and construes in the light most favorable to Defendants as the non-moving parties, as it must in the present procedural posture.

### A. Bond Loan and Loan Classification Policies

Defendants Ballew, Berryman, Rosenberry and Tabora allege that Union Home Mortgage illegally limited their ability to sell bond loans. Additionally, Ballew, Berryman, Rosenberry, and Luu indicate that Union Home Mortgage pressured them to misclassify the sources of their loans, in violation of federal law, to reduce loan officer compensation.

Bond loan programs "offer borrowing assistance to lower income borrowers." (ECF No. 55, ¶ 10, PageID #1359.) By comparison, other loan products are "more profitable" to the mortgage provider. (*Id.*, ¶ 14.) For this reason, Union Home Mortgage allegedly restricted the number of bond loans a loan officer could sell to his clients. (ECF No. 55, ¶ 11-14, PageID #1359; ECF No. 56, ¶ 16, PageID #1399; ECF No. 59, ¶ 20, PageID #1525; ECF No. #60, ¶ 12-15, PageID #1566.) At a company meeting in Baltimore, Bill Cosgrove, President of Union Home Mortgage, conveyed this policy to his employees by saying, "If you do three [bond loans] in a month, you're going to get a call from the sales manager; if you do four, and you're still employed, you're going to get a call from me." (ECF No. 49, PageID #981; ECF No. #56, ¶ 26, PageID #1400; ECF No. #55, ¶ 12, PageID #1359.) At some point, Union Home Mortgage adopted a policy of limiting loan officers' use of bond loans to 20% of overall sales. (ECF No. 77, ¶ 12, PageID #1927.) These restrictions ran counter to promises Union Home Mortgage allegedly made to Mr. Ballew when he joined the company. (ECF No. 56, ¶ 24-27, PageID #1400-01.) Ultimately, Union Home Mortgage ended

Mr. Ballew's access to the bond loan program after he exceeded the 20% limit.  (ECF No. 50, PageID #1094.)

Union Home Mortgage's restrictive bond loan policy adversely affected Ballew, Berryman, Rosenberry and Tabora because, at the time that they joined the company, bond loans were necessary for a large portion of their previously established client base.  (ECF No. #55, ¶ 10, PageID #1359, ECF No. #56, ¶ 24, PageID #1400; ECF No. #59, ¶ 21, PageID #1524; ECF No. #60, ¶ 10, PageID #1565.)  As a result of Union Home Mortgage's policy, they had to choose which clients could access the bond loan program, and they experienced a "significant downturn" in business.  (ECF No. #56, ¶ 27, PageID #1401; ECF No. #55, ¶ 13, PageID #1359; ECF No. #60, ¶ 14, PageID #1566.)  Mr. Tabora's sales were so affected that Union Home Mortgage demoted him to a part-time employee without benefits.  (ECF No. 50, PageID #1147–48.)  He resigned six months later.  (*Id.*)

Additionally, the commissions that loan officers earned at Union Home Mortgage varied with the source of the loan.  (ECF No. 73-1, PageID #1863; ECF No. 76-1, PageID #1920.)  "Self-generated" loans generated the highest commissions, while "company-generated" and "consumer-direct" generated less.  (ECF No. 73-1, PageID #1863; ECF No. 76-1, PageID #1920.)

Berryman, Ballew, Rosenberry, and Luu indicate that Union Home Mortgage pressured them to reclassify self-generated loans—on which loan officers earned the highest commission—as company-generated or consumer-direct.  (ECF No. #55, ¶ 15, PageID #1359; ECF No. #56, ¶ 13–14, PageID #1399; ECF No. #59, ¶ 17–18, PageID

4

#1524; ECF No. #61, ¶ 12–13, PageID #1606; ECF No. 50, PageID #1096.)  This practice caused them further losses through reduced compensation to both the loan officer and his respective branch office.  (ECF No. #55, ¶ 21, PageID #1360; ECF No. #56, ¶ 14, PageID #1399; ECF No. #61, ¶ 13, PageID #1606; ECF No. #59, ¶ 46, PageID #1527.)

Further, Defendants maintain that Union Home Mortgage's practices of restricting bond loans and promoting loan source misclassification violates federal regulations contained in 12 C.F.R Section 1026.36(d)-(e), which prohibit steering clients toward more profitable loan products and compensating loan officers based on the terms of their transactions.  *See* 12 C.F.R § 1026.36(d)–(e) (2021); ECF No. #55, ¶¶ 18 & 22, PageID #1360; ECF No. 56, ¶¶ 45 & 49, PageID #1402-03; ECF No. 59, ¶¶ 47 & 50, PageID #1527–28; ECF No. 60, ¶ 25, PageID #1567; ECF No. 61, ¶ 14, PageID #1606.)

## B.    Compensation Agreements

Elias Gonzales, Pedro Gonzalez, and Rosenberry allege that Union Home Mortgage reneged on agreements to pay them under a profit and loss structure, resulting in lost compensation.  Similarly, Mr. Ballew claims that Union Home Mortgage failed to provide him with a marketing stipend after previously agreeing to do so.

### B.1.    Michael Ballew

Mr. Ballew worked for Union Home Mortgage for three years before resigning in January 2025.  (ECF No. 50, PageID #1065.)  During his conversations with

5

recruiters for Union Home Mortgage in early 2022, the company promised Mr. Ballew that he would be able to offer bond loans to his client base.  (ECF No. 56, ¶ 11, PageID #1399; ECF No. 50, PageID #1091–92.)  However, Union Home Mortgage's later policy of limiting bond loans to 20% of sales allegedly violated this promise.  (*Id.*; ECF No. 56, ¶ 19, PageID #1400.)  Also, recruiters for Union Home Mortgage promised Mr. Ballew a production-based stipend of 15 basis points (0.15%) to cover his marketing expenses.   (ECF No. 56, ¶ 12, PageID #1399.)  However, Union Home Mortgage never paid him this stipend.  (*Id.*, ¶ 20, PageID #1400.)  Based on their prior agreement, Mr. Ballew calculates that Union Home Mortgage owes him $45,000 in marketing expenses.  (*Id.*, ¶ 30, PageID #1401.)

Plaintiff attaches to the pleadings several written contracts between Mr. Ballew and Union Home Mortgage, which outline the following facts.  (ECF No. 73-1; ECF No. 51-1.)

On February 4, 2022, Mr. Ballew signed an offer letter which prescribed terms for his employment at Union Home Mortgage.  (ECF No. 73-1, PageID #1859–61.)  These terms included a base salary, a guaranteed monthly commission, a sign-on bonus, and a commission of 15 basis points (0.15%) of production at the Staunton, Virginia branch.  (*Id.*)  The contract did not mention a marketing stipend or commit to offering bond loans.  (*Id.*)

In January 2023, Mr. Ballew signed an adjustment, which increased his commission from 15 to 75 basis points (0.75%).  (ECF No. 73-1, PageID #1862.)  On June 20, 2023, Ballew signed an employee agreement, which included non-compete

and non-disparagement provisions but did not set terms of compensation. (ECF No. 51-1, PageID #1249–51.) On April 4, 2024, Mr. Ballew signed an acknowledgment of Union Home Mortgage's commission payment schedule and its various commission rates, which varied by loan source. (ECF No. 73-1, PageID #1863–65.)

### B.2. Blain Rosenberry

Before his resignation in January 2025, Union Home Mortgage employed Mr. Rosenberry for eight and a half years. (ECF No. 49, PageID #883.) When he signed his contract in 2023, Mr. Rosenberry's supervisors allegedly promised to place his branch on a profit and loss compensation model. (ECF No. 49, PageID #934; ECF No. #59, ¶¶ 11, PageID #1523–24.) Following this agreement, Union Home Mortgage failed to provide Mr. Rosenberry with branch profit reports then later provided reports that did not accurately reflect his branch's profits. (*Id.*, ¶¶ 12–13, PageID #1523–24.) In 2024, when his employment contract was set to expire, he signed a new agreement with Union Home Mortgage that included another provision for compensation based on profit and loss. (ECF No. #76-1, PageID #1919; ECF No. 59, ¶ 15, PageID #1524.) Union Home Mortgage promised Mr. Rosenberry that he would receive this compensation after he accrued a three-month reserve. (*Id.*, ¶ 14, PageID #1524.) However, Union Home Mortgage never paid Mr. Rosenberry his promised commission for 2023 or 2024. (ECF No. 59, ¶ 16, PageID #1524.) Mr. Rosenberry seeks $255,000 for unpaid commissions during that period. (Id., ¶ 27, PageID #1525.)

Union Home Mortgage acknowledges that Mr. Rosenberry was on profit-and-loss compensation plan "for a time" and provides several 2024 contracts between it and Mr. Rosenberry.  (ECF No. 76, ¶ 24, PageID #1908; ECF No. 76-1; ECF No. 51-8.)  Though not complete, this record shows that, on September 18, 2024, Mr. Rosenberry acknowledged Union Home Mortgage's commission payment schedule and its various commission rates.  (ECF No. 76-1, PageID #1920–22.)  On September 19, 2024, Mr. Rosenberry signed a letter of amendment, which promised him a one-time bonus of $35,000 and alluded to compensation based on profit and loss:  "You will receive 20 bps [0.20%] Override on the Chambersburg, PA branch production (excluding personal production).  P&L must remain profitable, or changes will be required to be made."  (ECF No. 76-1, PageID #1919.)  This agreement took effect on October 1, 2024.  (*Id.*)  At the same time, Mr. Rosenberry signed an employee agreement, which referenced his $35,000 signing bonus but did not otherwise address terms of compensation.  (ECF No. 51-8, PageID #1289–92.)  In December 2024, Mr. Rosenberry signed an adjustment, which eliminated his annual salary and increased his profit-and-loss-based commission to 25 basis points (0.25%) on branch production.  (ECF No. 76-1, PageID #1923.)

### B.3.   Elias Gonzales and Pedro Gonzalez

During their two-and-a-half years of employment at Union Home Mortgage, Elias Gonzales and Pedro Gonzalez worked on a team together.  (ECF No. 49, PageID #1012 & #1034; ECF No. 57, ¶ 10, PageID #1441.)  In June 2024, they informed their managers that they would not renew their employment contracts.  (ECF No. #57,

8

¶ 11–12, PageID #1442; ECF No. #58, ¶ 11–12, PageID #1483.)  To induce them to stay with the company, Union Home Mortgage agreed to pay them according to a profit-and-loss model in which they would receive production-based bonuses.  (ECF No. #57, ¶ 13–14, PageID #1442; ECF No. #58, ¶ 13–14, PageID #1483.)  Under this agreement, Pedro Gonzalez and Elias Gonzales each accrued bonuses in excess of $300,000, which were never paid.  (ECF No. #57, ¶¶ 14–16, PageID #1442; ECF No. #58, ¶¶ 14–16, 41, PageID #1483 & #1485.)

When they testified at the hearing on Plaintiff's motion for an injunction, Pedro Gonzalez and Elias Gonzales recalled that the agreement was made verbally.  (ECF No. 49, PageID #1026-27, 1031 & 1048-50.)   However, Union Home Mortgage acknowledged that a profit-and-loss compensation arrangement was in place (ECF No. 74, ¶¶ 12–14, PageID #1869–70; ECF No. 75, ¶¶13–14, PageID #1887–88) and provided several contracts involving Pedro Gonzalez and Elias Gonzales (ECF No. 51-5; ECF No. 74-1; ECF No. 51-4; ECF No. 75-1).

These contracts outline the following facts.  On July 1, 2024, Pedro Gonzalez and Elias Gonzales each signed an employee agreement which included non-compete and non-disparagement provisions but did not prescribe terms of compensation. (ECF No. 51-5, PageID #1270–75; ECF No. 51-4, PageID #1263–68.) That same week, each signed a letter of amendment.  (ECF No. 75-1, PageID #1897; ECF No. 74-1, PageID #1879.)  Elias Gonzales signed a letter of amendment that eliminated his salary and replaced it with a commission of "5 bps [0.05%] override on the Bethesda, MD branch (including personal production)."  (ECF No. 75-1, PageID #1897.)  Pedro

Gonzalez signed an amendment that promised him a commission of "5 bps [0.05%] override on the Bethesda, MD branch (including personal production)" and acknowledged his $35,000 annual salary.  (ECF No. 74-1, PageID #1879.)

On September 11, 2024, each signed an acknowledgement of Union Home Mortgage's commission payment schedule and its various commission rates, which varied by the source of the loan.  (ECF No. 74-1, PageID #1880–82; ECF No. 75-1, PageID #1899–1901.)  On January 15, 2025, shortly before their resignations, Elias Gonzales and Pedro Gonzalez each signed a letter of amendment documenting their respective pay rates as $120,000 annually and promising a future salary review. (ECF No. 75-1, PageID #1898; ECF No. 74-1; PageID #1883.)

*    *    *

Ballew, Rosenberry, Elias Gonzales and Pedro Gonzalez each signed an employee agreement with Union Home Mortgage.  (ECF No. 51-1, PageID #1249–51; ECF No. 51-8, PageID #1289–92; ECF No. 51-4, PageID #1263–68; ECF No. 51-5, PageID #1270–75.)  For present purposes, these agreements are identical and contain a few provisions relevant to questions at hand.

Regarding compensation, the employee agreements stated in part:

New or Continued At-Will Employment. . . . The Company shall initially compensate Employee pursuant to the schedule set forth in the letter of employment.  Payment of commissions are based on loans closed through the date of termination.

(ECF No. 51-4, ¶ 1, PageID #1263; ECF No. 51-8, ¶ 1, PageID #1289; ECF No. 51-5, ¶ 1, PageID #1270; ECF No. 51-4, ¶ 1, PageID #1263.)

10

The record contains no documents identified as letters of employment. While Rosenberry's employment agreement included details of a signing bonus, the employment agreements otherwise contain no terms regarding compensation. (ECF No. 51-8, PageID #1289–92.)

Additionally, each employment agreement contains a provision that any amendment be in writing:

> Amendment, Survival, and Assignment. No amendment to this Agreement shall be effective unless contained in a signed written document. This Agreement will supersede all previous agreements between the two parties on the same subject matter. The covenants in this Agreement and the provisions related to them shall survive the conclusion of Employee's employment with the Company. This Agreement may be assigned by the Company without any further consent of Employee.

(ECF No. 51-8, ¶ 21, PageID #1292; ECF No. 51-8, ¶21, PageID #1292; ECF No. 51-5, ¶ 18, PageID #1272; ECF No. 51-4, ¶ 18, PageID #1265.)

## C. Discrimination

During his time at Union Home Mortgage, Mr. Luu worked mainly with Vietnamese clients, many of whom did not speak English. (ECF No. #61, ¶ 7, PageID #1605.) Often, his Vietnamese clients shared similar last names and similar professions. (ECF No. 61, ¶ 9, PageID #1606.) Based on these patterns and on the fact that a previous Vietnamese loan officer committed fraud, Union Home Mortgage allegedly subjected Mr. Luu's clients to "double and triple underwriting" as well as frequent investigations. (*Id.*; ECF No. 49, PageID #1003–05.) This practice slowed Mr. Luu's business and compelled him to turn away clients. (ECF No. 61, ¶¶ 10–11, PageID #1606.)

11

## STATEMENT OF THE CASE

Plaintiff filed its original complaint on February 17, 2025.  (ECF No. 1.)  On April 14, 2025, Defendants moved to dismiss the complaint for lack of jurisdiction.  (ECF No. 8.)  The Court largely denied that motion but granted it and dismissed Union Home Mortgage's claims against Nicholas Lichwick.  (ECF No. 45.)  On May 1, 2025, Plaintiff moved for a preliminary injunction to enjoin Defendants from working in similar capacities for Union Home Mortgage's competitor, American Pacific Mortgage.  (ECF No. 22.)  After receiving testimony and oral argument, the Court granted in part and denied in part Plaintiff's motion for a preliminary injunction.  (ECF No. 79.)

Then, Plaintiff filed its first amended complaint.  (ECF No. 51.)  In this amended complaint, Plaintiff asserted claims against nine defendants—Michael Ballew, Andy (Carl) Berryman, Elias Gonzales, Pedro Gonzalez, Hong (Bobby) Luu, Blain Rosenberry, George Tabora, Robert Webb, and Craig Franczak—for breach of contract, breach of contractual duty, civil conspiracy, breach of the common-law duty of loyalty, tortious interference, and violation of the Ohio Uniform Trade Secrets Act.  (ECF No. 51, PageID #1229–43.)  In the amended complaint, Plaintiff based various allegations on testimony from the preliminary injunction hearing.  (*See, e.g.*, *id.*, ¶ 220, PageID #1228.)

All nine Defendants filed answers.  (ECF No. 55; ECF No. 56; ECF No. 57; ECF No. 58; ECF No. 59; ECF No. 60; ECF No. 61; ECF No. 62; ECF No. 63.)  Seven Defendants—Andy (Carl) Berryman, Michael Ballew, Pedro Gonzalez, Elias

12

Gonzales, Blain Rosenberry, George Tabora, and Hong (Bobby) Luu—brought counterclaims as well. (ECF No. 55; ECF No. 56; ECF No. 57; ECF No. 58; ECF No. 59; ECF No. 60; ECF No. 61.) Berryman, Tabora, and Luu each assert a claim for wrongful constructive discharge in violation of public policy under Ohio law. (ECF No. #55, ¶¶ 17-27, PageID #1359–60; ECF No. 60, ¶¶ 19–29, PageID #1566–68; ECF No. #61, ¶¶ 15–30, PageID #1607–08.) Pedro Gonzalez and Elias Gonzalez each bring claims for breach of contract (Count I), unjust enrichment (Count II), and promissory estoppel (Count III). (ECF No. 57, ¶¶ 18–41, PageID #1442–44; ECF No. #58, ¶¶ 18–41, PageID #1483–85.) Ballew and Rosenberry each claim breach of contract (Count I), unjust enrichment (Count II), an action on account (Count III), and wrongful constructive discharge in violation of public policy (Count IV). (ECF No. #56, ¶¶ 22–54, PageID #1400–03; ECF No. 59, ¶¶ 23–54, PageID #1525–28.) In their counterclaims, Defendants also included allegations based on the testimony at the preliminary injunction hearing. (*See, e.g.*, ECF No. 55, ¶ 23, PageID #1361.)

Plaintiff moved for judgment on the pleadings as to all counterclaims. (ECF No. 80.) As its main argument, Plaintiff contends that the breach of contract and other compensation-related counterclaims fail because they are at odds with Defendants' signed contracts. (ECF No. 81, PageID #2028–34.) Additionally, Plaintiff denies that any Defendant experienced constructive discharge or is otherwise eligible to raise a claim for wrongful discharge in violation of public policy. (*Id.*, PageID #2035–39.)

In response, Defendants argue that the record does not contain the complete collection of agreements between the parties, and the terms of their compensation contracts contain ambiguity.  (ECF No.  81, PageID #2053–63.)  Additionally, Defendants maintain that they were constructively discharged because remaining with Union Home Mortgage required their participation in unlawful business practices.  (*Id.*, PageID #2066-69.)

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard.  *See, e.g., Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016).  In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law.  *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021).  In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236-37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

On a motion under Rule 12(c), courts apply Rule 8's familiar pleading standard. *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations"

14

that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation omitted).  Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575.  Nor are facts that are "merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

Defendants invite the Court to consider the transcript of the preliminary injunction hearing which are within the record of this case and which are referenced repeatedly in the operative pleadings.  (ECF No. 85, PageID #2055, fn. 3; ECF No. 57, ¶¶ 25–26, 29, 35–36 & 40, PageID #1443–44; ECF No. 61, ¶¶ 7 & 18, PageID #1605 & 1607; ECF No. 58, ¶¶ 25, 26, 29, 36, 39 & 40, PageID #1484–85; ECF No. 59, ¶¶ 10–15, 17, 20, 44 & 48, PageID #1523–24 & 1527; ECF No. 56, ¶¶ 17, 26, 46, 50 & 52, PageID #1399–1400 & 1403; ECF No. 60, ¶¶ 10, 21 & 26, PageID #1565 & 1567; ECF No. 55, ¶¶ 10–12, 20 & 23, PageID #1359–60.)  On a motion under Rule 12(c), courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint and are central to the claims.  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  In this case, the parties cite the transcript throughout the pleadings, making it central to the claims and defenses at issue.  Therefore, the Court treats the transcript from the preliminary injunction hearing as part of the pleadings.

15

## I.     Wrongful Constructive Discharge in Violation of Public Policy

Defendants Michael Ballew, Andy (Carl) Berryman, Hong (Bobby) Luu, Blain Rosenberry, and George Tabora each assert counterclaims for wrongful constructive discharge in violation of Ohio public policy.  In doing so, each alleges that he was compelled to resign because of Union Home Mortgage's policies, which violated federal law:  specifically, policies restricting bond loan sales, encouraged loan misclassification, and discriminated against Mr. Luu's Vietnamese clientele.  (ECF No. 61, ¶¶ 17–28, PageID #1607–08.)

Each Defendant's signed employment agreement contains a choice of law provision for Ohio law.  (ECF No. 51-1, ¶ 14, PageID #1251; ECF No. 51-3, ¶ 16, PageID #1258; ECF No. 51-4, ¶ 14, PageID #1265; ECF No. 51-5, ¶ 14, PageID #1272; ECF No. 51-7, ¶ 17, PageID #1285; ECF No. 51-8, ¶ 17, PageID #1291; ECF No. 51-9, ¶ 19, PageID #1297; ECF No. 51-10, ¶ 18, PageID #1301–02.)  "In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort." *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228, 235, 551 N.E.2d 981, 987 (1990).  To bring such a claim, a plaintiff must plead four elements:  (1) a clear State or federal public policy (known as the clarity element); (2) dismissal of employees jeopardizes this public policy (the jeopardy element); (3) conduct relating to the public policy motivated the plaintiff's dismissal (the causation element); and (4) the absence of a legitimate business justification for the dismissal (the overriding justification element).  *Hollar v. RJ Coffey Cup, LLC*, 505 F. Supp. 2d 439, 454 (N.D. Ohio 2007) (citing *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69–70, 1995-Ohio-135, 652

16

N.E.2d 653). This cause of action is available to plaintiffs who were constructively discharged as well as to those whose employment was explicitly terminated. *Collins*, 73 Ohio St. 3d at 71.

To determine whether a constructive discharge occurred, Ohio courts consider "whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 588–89, 1996-Ohio-265, 664 N.E.2d 1272, 1280–81. "In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Id.*

Defendants argue that they left Union Home Mortgage under circumstances amounting to constructive discharge. As they see it, Union Home Mortgage "gave them Hobson's choice: perform their duties consistent with [the company's] policies and expectations (i.e., unethically and in violation of federal law) or not selling loans at all (how they were paid)." (ECF No. 85, PageID #2066.) In addition to creating legal and ethical peril, compliance with Union Home Mortgage's policies adversely affected Defendants' abilities to earn a living. (*Id.*, PageID #2066–67.)

Constructive discharge is not necessarily present where an employee resigns to avoid participation in the illegal or unethical practices of his employer. *See Handford v. Buy Rite Off. Prods., Inc.*, 2013-Ohio-4712, 3 N.E.3d 1245, ¶¶ 35–36; *Swann v. Fresenius Mgmt. Servs., Inc.,* No. 1:14-cv-00843, 2015 WL 4647141, at *4 (N.D. Ohio Aug. 4, 2015). Rather, an employee facing such circumstances must still

17

demonstrate that the employer's actions would make a reasonable person believe that termination was imminent.  *Handford*, 2013-Ohio-4712, ¶ 35.

In this case, Ballew, Berryman, Luu, Rosenberry, and Tabora fail to make allegations that would support such a showing.  Their descriptions of Union Home Mortgage's policies suggest that their employment with the company was unprofitable as well as professionally and ethically concerning.  Executives at Union Home Mortgage threatened phone calls and possibly adverse employment action to any employee who might sell too many bond loans.  For the most part, however, Defendants reduced their sale of bond loans in accordance with this policy, to their own detriment.  Only Mr. Ballew lost access to the bond loan program for exceeding the 20% limit.  No Defendant recounts receiving one of the threatened phone calls or other punishments.  For better or worse, Defendants navigated Union Home Mortgage's policies, and Union Home Mortgage did not signal any intention to end the arrangement.

Because termination was not imminent on the facts alleged, Defendants were not constructively discharged.  As a matter of law, their claims for wrongful constructive discharge in violation of public policy may not proceed.

## II.      Breach of Contract

Defendants Michael Ballew, Elias Gonzales, Pedro Gonzales, and Blain Rosenberry bring counterclaims for breach of contract.  They base these claims on allegations that Union Home Mortgage failed to pay them as agreed, either by withholding profit-and -loss compensation or by withholding a marketing stipend.

18

Additionally, Mr. Ballew indicates that Union Home Mortgage reneged on a promise to make bond loans available for his clients.  Plaintiff contends that these claims are unsupported by Defendants' respective contracts and that the breach of contract claims may, therefore, be resolved in Plaintiff's favor as a matter of law.  (ECF No. 81, PageID #2028-31.)  To support this argument, Plaintiff provided a collection of signed agreements for each Defendant.  (ECF No. 73-1; ECF No. 74-1; ECF No. 75-1; ECF No. 76-1; ECF No. 51-1; ECF No. 51-4; ECF No. 51-5; ECF No. 8.)

Under Ohio law, "contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 544 N.E.2d 920, 923 (Ohio 1989); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37).  The parties' intent is "presumed to reside in the language they chose to employ in the agreement." *Anzalaco v. Graber*, 2012-Ohio-2057, 970 N.E.2d 1143, ¶ 19 (Ohio Ct. App.) (citing *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 509 N.E.2d 411, 413 (1987)).  To discern the parties' intent, courts look to the plain and ordinary meaning of the language in their agreement. *Eastham*, 754 F.3d at 361.  A contract "is to be read as a whole and the intent of each part gathered from a consideration of the whole." *Saunders v. Mortensen*, 101 Ohio St. 3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16 (citation omitted).  Prior or contemporaneous verbal agreements between the parties to a written contract are considered merged in the written contract; therefore, they

19

cannot be used to contradict the written contract's terms.  *Owens v. Baker*, 48 Ohio App. 347, 351, 193 N.E. 778, 780 (1933).

According to the normal rules of contract construction under Ohio law, "an interpretation that renders a provision meaningless 'is neither acceptable nor desirable.'"  *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 51 (quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St. 3d 657, 597 N.E.2d 1096, 1103 (1992)).  Therefore, the Court "must give effect to each provision of the contract" if doing so is reasonable.  *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St. 3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 17 (citing *Expanded Metal Fire-Proofing Co. v. Noel Constr. Co.*, 87 Ohio St. 428, 101 N.E. 348, 350 (1913)); *Savedoff*, 524 F.3d at 763 (quoting *Stone v. National City Bank*, 106 Ohio App. 3d 212, 665 N.E.2d 746, 752 (1995)).

### II.A.  Michael Ballew

Mr. Ballew bases his breach of contract claim on promises that Union Home Mortgage made at the time of his recruitment.  (ECF No. 56, ¶¶ 11–12, PageID #1399.)  In his conversations with the recruiters, the company promised Mr. Ballew that he would have access to the bond loans necessary for his client base.  (ECF No. 50, PageID #1091–92.)  Additionally, Union Home Mortgage allegedly promised him a production-based stipend of 15 basis points (0.15%) to cover his marketing expenses.  (ECF No. 56, ¶ 12, PageID #1399.)  Ultimately, however, Union Home Mortgage limited his access to bond loans and failed to pay him the stipend.  (*Id.*, ¶¶ 20 & 24–27, PageID #1400–01.)

20

At the start of his employment, Mr. Ballew signed an offer letter that outlined the terms of his employment at Union Home Mortgage.  (ECF No. 73-1, PageID #1859–61.)  These terms included a base salary, a guaranteed monthly commission, a sign-on bonus, and a commission of 15 basis points (0.15%) on production at the Staunton, Virginia branch.  (*Id.*)  His contract did not include mention of a marketing stipend, and it did not commit to offering bond loans.  (*Id.*)

Mr. Ballew describes a verbal agreement with recruiters for Union Home Mortgage predating his contract and contradicting it.  But a verbal agreement may not be used to this effect.  *Owens*, 193 N.E. at 780.  For this reason, Ohio law bars Mr. Ballew's claim for breach of contract.

### II.B.  Blain Rosenberry

Mr. Rosenberry claims that Union Home Mortgage agreed to pay him on a profit-and-loss model in 2023 and again in 2024 but failed to follow through with either arrangement.  (ECF No. 49, PageID #934; ECF No. #59, ¶¶ 11 & 15–16, PageID #1523–24.)  Additionally, he indicates that several profit-and-loss reports Union Home Mortgage prepared during that timeframe inaccurately measured Mr. \ Rosenberry's branch profits and denied him compensation accordingly.  (*Id.*, ¶¶ 12–13, PageID #1523-24.)

Plaintiff acknowledges that Rosenberry was paid on a profit-and-loss model "for a period of time."  (ECF No. 76, ¶ 15, PageID #1906.)  A signed 2024 contract in the record supports this fact.  (ECF No. 76-1, PageID #1919.)  However, the record contains no contracts for 2023.  Nor does it answer the question whether

21

Mr. Rosenberry's 2023 and 2024 compensation was accurately calculated based on his contracts and the profitability of his work.  These claims cannot be resolved as a matter of law at this stage of the proceedings.  Therefore, dismissal is not appropriate.

### II.C.  Elias Gonzales and Pedro Gonzalez

Like Defendant Blain Rosenberry, Defendants Elias Gonzales and Pedro Gonzalez assert breach of contract claims that center on non-payment of profit-and-loss compensation.  (ECF No. #57, ¶¶ 14-16, PageID #1442; ECF No. #58, ¶¶ 14–16, 41, PageID #1483 & #1485.)  As with Mr. Rosenberry, Plaintiff acknowledges that Defendants Elias Gonzales and Pedro Gonzalez had a profit-and-loss compensation arrangement.  (ECF No. 74, ¶¶ 12–14, PageID #1869–70; ECF No. 75, ¶¶13–14, PageID #1887–88.)  Plaintiff provides a collection of contracts supporting these representations.  (ECF No. 51-5; ECF No. 74-1; ECF No. 51-4; ECF No. 75-1.)  Again, the claims for breach of contract that Defendants Elias Gonzales and Pedro Gonzalez bring cannot be resolved as a matter of law at this stage of the proceedings.

### III.    Action on Account

Defendant Michael Ballew brings an action on an account.  He bases this claim on his allegation that Union Home Mortgage failed to pay him the marketing stipend to which the parties agreed.  (ECF No. 56, ¶¶40–42, PageID #1402.)  During his employment at Union Home Mortgage, he kept an active ledger of his loan production, which provided the basis for calculating his stipend.  (*Id.*)

Ohio courts explain that "[a]n action upon an account is founded in contract." *American Sec. Service, Inc. v. Baumann*, 32 Ohio App. 2d 237, 242, 289 N.E.2d 373

(Ohio Ct. App. 1972).  "The action exists to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action." *Creditrust Corp. v. Richard*, Case. No. 72AP-18, 2000 WL 896265, at *3 (Ohio Ct. App. 2000) (citation omitted).  "[T]o properly plead and prove an action on an account, a [party] must attach an account to the [pleading]" under Rule 10(D) of the Ohio Rules of Civil Procedure.  *Creditrust*, 2000 WL 896265, at *3.  No comparable rule of procedure applies in federal court.

When a plaintiff brings a claim for an action on an account is placed in issue, the party "is required to prove all the necessary elements of a contract action, and, in addition, to prove that the contract involves a transaction or transactions that usually form the subject of a book account."  *Baumann*, 32 Ohio App. 2d 237, at 244–45.  Because Mr. Ballew brings a counterclaim for breach of contract, which fails as a matter of law, his accounting claim also fails because he cannot state a contract claim.  Therefore, Plaintiff is entitled to judgment as matter of law on this claim.

## IV.    Unjust Enrichment

Defendants Elias Gonzales, Pedro Gonzalez, Michael Ballew, and Blain Rosenberry each assert counterclaims for unjust enrichment on the same compensation allegations described above.  Plaintiff argues that they cannot seek damages for unjust enrichment because their employment contracts with Union Home Mortgage govern this dispute.

Absent bad faith or fraud, Ohio law makes quasi-contractual theories of recovery unavailable where, as here, the parties have a written agreement that covers

23

the claims at issue.  "[T]he doctrine of unjust enrichment . . . is 'inapplicable if an express agreement existed concerning the services for which compensation is sought.'" *Champion Contracting Const. Co. Inc.*, No. 03CA0092-M, 2004-Ohio-3406, ¶ 25 (Ohio Ct. App.) (citing *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55, 544 N.E.2d 920 (1989)).  Simply, "unjust enrichment is not available when an express contract will afford the complainant the same recovery."  *City of Cincinnati v. Cincinnati Reds*, 19 Ohio App. 3d 227, 230–31, 483 N.E.2d 1181 (Ohio Ct. App. 1984).

Defendants explain that they bring these claims in the alternative to their breach of contract claims.  (ECF No. 85, PageID #2063.)  However, these claims are not necessary here because there is no dispute that the parties have contracts.  Therefore, unjust enrichment is not an avenue by which they may seek a remedy.  Plaintiff is entitled to judgment as a matter of law on these counterclaims.

## V.    Promissory Estoppel

Defendants Elias Gonzales and Pedro Gonzalez also bring promissory estoppel claims over Plaintiff's alleged failure to compensate them.  Like unjust enrichment, "promissory estoppel is not an available remedy where the legal relationship of the parties is governed by a valid and enforceable contract."  *Kahler v. Cincinnati Inc.*, No. C-140407, 2015-Ohio-979, ¶ 20 (Ohio Ct. App. Mar. 18, 2015).  Where parties enter into an enforceable written contract "and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel."  *Id.*

24

Again, Defendants bring these claims in the alternative to their contract claims and out of an abundance of caution.  (ECF No. 85, PageID #2065.)  But because contracts govern the relationship between the parties, promissory estoppel is not available to Defendants as an avenue for relief.  Therefore, these claims do not survive Plaintiff's motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.  Specifically, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings and dismisses the counterclaims of Defendants Michael Ballew (ECF No. 56), Andy (Carl) Berryman (ECF No. 55), Hong (Bobby) Luu (ECF No. 61), and George Tabora (ECF No. 60).  The Court **DENIES** Plaintiff's motion as to the breach of contract claims raised by Defendants Elias Gonzales (ECF No. 58), Pedro Gonzalez (ECF No. 57), and Blain Rosenberry (ECF No. 59).  As to the remaining counterclaims that these Defendants raise, the Court **GRANTS** Plaintiff's motion.

**SO ORDERED.**

Dated:  August 6, 2026

 

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

25